George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

John W. Dillon (SBN 296788)
jdillon@gdandb.com
**GATZKE DILLON & BALLANCE LLP**
2762 Gateway Road
Carlsbad, California 92009
Phone: (760) 431-9501
Fax: (760) 431-9512

Adam Kraut, Esq.
akraut@fpclaw.org
**FIREARMS POLICY COALITION**
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342
*Pro Hac Vice Forthcoming*

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ALTMAN, an individual; RYAN GOODRICH, an individual; ALBERT LEE SWANN, an individual; ROMAN KAPLAN, an individual; YAN TRAYTEL, an individual; DMITRI DANILEVSKY, an individual; GREG DAVID, an individual; CITY ARMS EAST LLC; CITY ARMS LLC; CUCKOO COLLECTIBLES LLC d.b.a. EDDY'S SHOOTING SPORTS; SECOND AMENDMENT FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; NATIONAL RIFLE ASSOCIATION OF AMERICA; CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

INC.; and FIREARMS POLICY COALITION, INC.,

Plaintiffs,

vs.

COUNTY OF SANTA CLARA, CALIFORNIA; LAURIE SMITH, in her capacity as Sheriff of the County of Santa Clara; JEFFREY ROSEN, in his official capacity as Santa Clara County District Attorney; SARA CODY, in her official capacity as Santa Clara County Health Officer; CITY OF SAN JOSE, CALIFORNIA; SAM LICCARDO, in his official capacity as Mayor of San Jose; EDGARDO GARCIA, in his official capacity as Chief of Police for the City of San Jose; CITY OF MOUNTAIN VIEW, CALIFORNIA; MAX BOSEL, in his official capacity as the Chief of Police for the City of Mountain View; COUNTY OF ALAMEDA, CALIFORNIA; GREGORY AHERN, in his capacity as Sheriff of the County of Alameda; ERICA PAN, in her capacity as Health Officer of the County of Alameda; COUNTY OF SAN MATEO, CALIFORNIA; CARLOS BOLANOS, in his capacity as Sheriff of the County of San Mateo; SCOTT MORROW in his capacity as San Mateo County Health Officer; CITY OF PACIFICA, CALIFORNIA; DAN STEIDLE, in his official capacity as the Chief of Police for the City of Pacifica; COUNTY OF CONTRA COSTA, CALIFORNIA; DAVID LIVINGSTON, in his capacity as Sheriff of the County of Contra Costa; CHRIS FARNITANO, in his capacity as Health Officer of Contra Costa County; CITY OF PLEASANT HILL, CALIFORNIA; BRYAN HILL in his official capacity as Chief of Police for the City of Pleasant Hill,

Defendants.

Plaintiffs Janice Altman, *et al*. ("Plaintiffs"), by and through counsel of record, bring this complaint for injunctive and declaratory relief against the named Defendants, and allege as follows:

**INTRODUCTION**

1.      California's local governments cannot simply suspend the Constitution. Authorities may not, by decree or otherwise, enact and/or enforce a suspension or deprivation of constitutional liberties. And they certainly may not use a public health crisis as political cover to impose bans and restrictions on rights they do not like.

2.      Firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential businesses that provide essential access to constitutionally protected fundamental, individual rights. If firearms and ammunition could be purchased online like other constitutionally protected artifacts, such as paper, pens, ink, and technology products that facilitate speech, then individuals could simply purchase what they need and have the items delivered to their doorsteps. But because of an onerous and complicated federal, state, and local regulatory scheme, people in California cannot exercise their Second Amendment right to keep and bear arms without going in person to such essential businesses (at least once for ammunition, and at least twice for firearms).

3.      In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties. Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms. By forcing duly licensed, essential businesses to close or eliminate key services for the

general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California. Such a prohibition on the right to keep and bear arms is categorically unconstitutional.

4.      The circumstances posed by the COVID-19 Novel Coronavirus outbreak present challenges to all of us, including the government. Responding to those challenges, for example, some law enforcement officials are releasing inmates from jails. With governments having no legal duty to protect the people they serve, and with no guarantee that law enforcement will even respond to one's 911 call during this crisis or after it (let alone in time to prevent a crime), people who turn to their fundamental, individual, Second and Fourteenth Amendment rights cannot be denied them.

5.      The need for self-defense during uncertain times is precisely when Plaintiffs and Plaintiffs' members must be able to exercise their fundamental rights to keep and bear arms. The challenges we all face because of the COVID-19 Coronavirus, or any other such emergency, does not, cannot, and must not justify or excuse government infringements upon fundamental human rights.

**PARTIES**

*Individual Plaintiffs*

6.      Plaintiff Altman is a natural person, a citizen of the United States, and a resident of the City of San Jose in Santa Clara County, California. Plaintiff Altman is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Altman holds a valid California Firearm Safety Certificate ("FSC"). Plaintiff Altman is concerned about her safety and the safety of her family, wants to exercise her right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants'

laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

7.     Plaintiff Goodrich is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Goodrich is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Goodrich is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

8.     Plaintiff Swann is a natural person, a citizen of the United States, and a resident of the County of Alameda, California. Plaintiff Swann is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Swann is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

9.     Plaintiff Roman Kaplan is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Kaplan is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Kaplan is the co-owner and operator of Plaintiff City Arms East LLC in Pleasant Hill, California. Plaintiff Kaplan is concerned about his safety and the safety of his customers and the

public. On behalf of himself and his customers, Plaintiff Kaplan would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

10.     Plaintiff Yan Traytel is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Traytel is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Traytel is the co-owner and operator of Plaintiff City Arms East LLC in Pleasant Hill, California. Plaintiff Traytel is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Traytel would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

11.     Plaintiff Dmitri Danilevsky is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Danilevsky is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Danilevsky is the owner and operator of Plaintiff City Arms LLC in Pacifica, California. Plaintiff Danilevsky is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Danilevsky would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the

reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

12.     Plaintiff Greg David is a natural person, a citizen of the United States, and a resident of the County of Santa Clara, California. Plaintiff David is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff David is the owner and operator of Plaintiff Cuckoo Collectibles LLC, d.b.a. Eddy's Shooting Sports in Mountain View, California. Plaintiff David is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff David would conduct training and education, perform FSC testing for, and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

*Retailer Plaintiffs*

13.     Plaintiff City Arms LLC ("City Arms"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Pacifica, California, a city in San Mateo County, California. Plaintiff City Arms is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff City Arms would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

14.     Plaintiff City Arms East LLC ("City Arms East"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Pleasant Hill, California, a city in Contra Costa County, California. Plaintiff City Arms East is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff City Arms East would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

15.     Plaintiff City Cuckoo Collectible LLC, d.b.a. Eddy's Shooting Sports ("Eddy's"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Mountain View, California, a city in Santa Clara County, California. Plaintiff Eddy's Shooting Sports is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff Eddy's Shooting Sports would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

*Institutional Plaintiffs*

16.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in

Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in California. SAF brings this action on behalf of itself and its members. Individual Plaintiffs and Retailer Plaintiff are members of SAF.

17.     Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members and supporters in California, including members in Defendants' respective jurisdictions and the Individual and Retailer Plaintiffs herein. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies, practices, and customs challenged herein. CGF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

18.     Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement. It is also an important defender of the Second Amendment to the United States Constitution. The NRA has over five million members, and its programs reach millions more. NRA's members reside both outside and within the State of California. NRA represents its members and supporters and brings this action on behalf of itself, its members,

supporters who possess all the indicia of membership, and similarly situated members of the public. NRA has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

19.    Plaintiff California Association of Federal Firearms Licensees, Inc. ("CAL-FFL") is nonprofit organization incorporated under the laws of California with its principal place of business in Sacramento, California. CAL-FFL serves its members and the public through direct and grassroots issue advocacy, regulatory input, legal efforts, and education. CAL-FFL's membership includes firearm dealers, training professionals, shooting ranges, licensed collectors, and others who participate in the firearms ecosystem. The interpretation and enforcement of the Constitution directly impacts CAL-FFL's organizational interests, as well as the rights of CAL-FFL's members and supporters. CAL-FFL has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies, practices, and customs challenged herein. CAL-FFL brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the firearm licensee industry and the public. Retailer Plaintiffs are members of CAL-FFL.

20.    Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights – especially but not limited to First and Second Amendment rights – advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC's has members in the State of California, including members in Defendants' respective jurisdictions and the Individual and Retailer Plaintiffs herein. FPC represents its members and supporters—who include gun owners,

individuals who wish to acquire firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

*Santa Clara Defendants*

21.    Defendant County of Santa Clara, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

22.    Defendant Jeffrey Rosen is the District Attorney for the County of Santa Clara, California. Defendant Rosen is the lead prosecutor of Santa Clara County. His office is responsible for the enforcement of the laws of California, including those at issue herein. Defendant Rosen is sued in his official capacity.

23.    Defendant Laurie Smith is the Sheriff of Defendant Santa Clara County, California and head of Santa Clara County Sheriff's Office. As the Sheriff, she is responsible within the County for the enforcement and execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Smith is sued in her official capacity.

24.    Defendant Sara Cody is the Public Health Officer for the County of Santa Clara, California. Defendant Cody is the head of the Santa Clara County Department of Public Health. The Santa Clara Department of Health is the department responsible for public health in Santa Clara County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Cody is sued in her official capacity.

25.     Defendant City of San Jose, California is a local governmental entity in Santa Clara County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

26.     Defendant Sam Liccardo is the Mayor of the City of San Jose, California. As Mayor, he is responsible for the direction, enforcement, and execution of the City of San Jose's laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Liccardo is sued in his official capacity.

27.     Defendant Edgardo ("Eddie") Garcia is the Chief of Police for the City of San Jose, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Garcia is sued in his official capacity.

28.     Defendant City of Mountain View, California is a local governmental entity in Santa Clara County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

29.     Defendant Max Bosel is the Chief of Police for the City of Mountain View, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Bosel is sued in his official capacity.

*Alameda Defendants*

30.     Defendant County of Alameda, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

31.     Defendant Gregory Ahern is the Sheriff of Defendant Alameda County, California and head of Alameda County Sheriff's Office. As the Sheriff, he is responsible within the County for the enforcement and execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Ahern is sued in his official capacity.

32.     Defendant Erica Pan is a Public Health Officer for the County of Alameda, California. The Alameda Health Services Department is the department responsible for public health in Alameda County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Pan is sued in her official capacity.

*San Mateo Defendants*

33.     Defendant County of San Mateo, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

34.     Defendant Scott Morrow is a Health Officer for the County of San Mateo, California. The San Mateo Health Department is the department responsible for public health in San Mateo County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Morrow is sued in his official capacity.

35.     Defendant City of Pacifica, California is a local governmental entity in San Mateo County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

36.     Defendant Dan Steidle is the Chief of Police for the City of Pacifica, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Steidle is sued in his official capacity.

*Contra Costa Defendants*

37.     Defendant County of Contra Costa, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

38.     Defendant Chris Farnitano is a Public Health Officer for the County of Contra Costa, California. The Contra Costa Health Services Department is the department responsible for public health in Contra Costa County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Farnitano is sued in his official capacity.

39.     Defendant City of Pleasant Hill, California is a local governmental entity in Contra Costa County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, customs, practices, and policies at issue in this lawsuit.

40.     Defendant Max Bryan Hill is the Chief of Police for the City of Pleasant Hill, California. As the Chief of Police, he is responsible within the City for the enforcement and

execution of the laws, orders, policies, practices, and actions at issue in this lawsuit. Defendant Hill is sued in his official capacity.

## JURISDICTION AND VENUE

41.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the State of California, of the rights, privileges or immunities secured by the United States Constitution.

42.     Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS
### *Constitutional Background*

43.     The Second Amendment to the United States Constitution provides: "A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed."

44.     The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

45.     The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id.* at 805 (Thomas, J., concurring).

46.     The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

47.     Individuals have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

48.     Licensed firearm and ammunition retailers and shooting ranges are necessary to individuals' lawful acquisition of firearms and ammunition, including but not limited to complying with federal and state background check requirements.

49.     In 2008, the United States Supreme Court held that the District of Columbia's requirement that permitted firearms within the home, but required that said firearms in the home be kept inoperable, made it impossible for citizens to use firearms for the core lawful purpose of self-defense and was hence unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

50.     In 2010, the United States Supreme Court held that—the Second Amendment right to keep and bear arms is—fundamental to our scheme of ordered liberty and, therefore, incorporated against the states through the Due Process Clause of the Fourteenth Amendment. *McDonald v. Chicago*, 130 S. Ct. 3020, 3036 (2010).

51.     The fundamental, individual right to keep and bear loaded, operable firearms in the home includes the right to lawfully acquire firearms, ammunition, magazines, and appurtenances.

52.     Individuals have a right to buy, sell, transfer, and practice with arms, including but not limited to, firearms, ammunition, magazines, and required appurtenances. Firearm and ammunition retailers and shooting ranges are necessary to individuals' exercise of their rights.

*State and Federal Orders*

53.     On or about March 4, 2020, Governor Newsom proclaimed a State of Emergency as a result of COVID-19.

54.     On March 19, 2020, Governor Gavin Newsom signed Executive Order N-33-20,[1] directing all individuals living in California to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors."

55.     Executive Order N-33-20 is in place until further notice. The Governor's N-33-20 directed all California residents "to heed" the directives of the State Public Health Officer, Sonia Angell, and incorporated into the Executive Order Director Angell's Order of the same date.[2]

56.     Director Angell's Order states that all people in California must stay home people "except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

57.     An express purpose of Angell's Order is to "establish consistency across" – i.e., throughout – "the state."

58.     Notably, on March 28, 2020, the Department of Homeland Security, Cyber-Infrastructure Division ("CISA"), issued an updated "ADVISORY MEMORANDUM ON

---

[1] Executive Department, State of California, Governor Gavin Newsom Executive Order N-33-20, https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.

[2] Order of the State Public Health Officer, Mar. 19, 2020, https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19.2020.pdf.

IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE," online at https://bit.ly/cisa-guidance-2020-3-28, under its Web page for "Guidance on the Essential Critical Infrastructure Workforce" during the COVID-19 pandemic.[3] While the CISA's guidance is advisory in nature, its findings and conclusions are inherently entitled to great weight in this context, particularly since they were "developed, in collaboration with other federal agencies, State and local governments, and the private sector" for the specific purpose of "help[ing] State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." To that very end, CISA specifically determined that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce."

*Statutory Background*

59.     In California, a violation of a statute is a misdemeanor unless specified to be punishable otherwise. California Penal Code Prelim. Prov. 19.4 ('When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor.")

60.     Government Code section 26620 states: "The office of county director of emergency services shall be held ex officio by the county sheriff."

61.     Government Code section 41601 states: "For the suppression of riot, public tumult, disturbance of the peace, or resistance against the laws or public authorities in the lawful exercise of their functions, and for the execution of all orders of the local health officer issued for the

---

[3] Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.

purpose of preventing the spread of any contagious, infectious, or communicable disease, the chief of police has the powers conferred upon sheriffs by general law and in all respects is entitled to the same protection."

62.     Government Code section 101029 states: "The sheriff of each county, or city and county, may enforce within the county, or the city and county, all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. Every peace officer of every political subdivision of the county, or city and county, may enforce within the area subject to his or her jurisdiction all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. This section is not a limitation on the authority of peace officers or public officers to enforce orders of the local health officer. When deciding whether to request this assistance in enforcement of its orders, the local health officer may consider whether it would be necessary to advise the enforcement agency of any measures that should be taken to prevent infection of the enforcement officers."

63.     Government Code section 101029 states: "The county health officer shall enforce and observe in the unincorporated territory of the county, all of the following: (a) Orders and ordinances of the board of supervisors, pertaining to the public health and sanitary matters. (b) Orders, including quarantine and other regulations, prescribed by the department. (c)  Statutes relating to public health."


*Santa Clara County Background*

64.     On or about March 16, 2020, the Public Health Department of the County of Santa

Clara issued an order directing all residents of the County to shelter in place until April 7, 2020.[4]

65.     Under section 3 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

66.     Under section 11 of the Order, the Defendant Sheriff Smith and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

67.     On March 31, 2020, the Public Health Department of the County of Santa Clara issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020.[5]

68.     Under section 5 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

69.     Under section 15 of the Order, the Defendant Sheriff Smith and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

70.     Plaintiff Altman would like to purchase a firearm and ammunition for self-defense. Plaintiff Altman is concerned that as a result of the COVID-19 crisis, Santa Clara County has

---

[4] https://www.sccgov.org/sites/phd/DiseaseInformation/novel-coronavirus/Documents/03-16-20-Health-Officer-Order-to-Shelter-in-Place.pdf.

[5] https://www.sccgov.org/sites/phd/DiseaseInformation/novel-coronavirus/Pages/order-health-officer-033120.aspx

released an unknown number of prison inmates back onto the streets of Santa Clara County. Plaintiff Altman is not prohibited from possessing firearms under state or federal law. Furthermore, Plaintiff Altman possesses a California FSC. She can take possession of a purchased firearm and ammunition upon the completion of a background check. Plaintiff Altman resides minutes away from Reed's Indoor Range, a well-known firearm and ammunition retailer, indoor shooting range, and training facility shuttered by the Santa Clara District Attorney, according to the retailer's Website. However, due to Santa Clara Defendants' Orders and enforcement actions, she is unable to purchase a self-defense firearm and ammunition. Plaintiff Altman cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, Plaintiff Altman is prohibited from exercising her right to keep and bear loaded, operable firearms for self-defense, including in her home.

71.     On March 30, 2020, Plaintiff David received email communication from Defendant Mountain View Police Chief Max Bosel. In the email, Defendant Chief Bosel advised Plaintiff David that Eddy's Shooting Sports was required to close entirely. Pursuant to Defendant Santa Clara County's Order, Plaintiff Eddy's and other retailers deemed non-essential would not be permitted to operate and sell any merchandise.

72.     As reported by San Jose Mercury News, Defendant Mayor Liccardo said that "We are having panic buying right now for food. The one thing we cannot have is panic buying of guns."[6]

---

[6] https://www.mercurynews.com/2020/03/18/coronavirus-san-jose-orders-gun-store-to-close-in-one-of-first-tests-of-essential-under-shelter-order/.

1    73.    On the Website for Reed's Indoor Range[7], a shooting range, retailer, and training

2  facility in Santa Clara County, a prominent Notice states: "Closed by order of the Santa Clara

3  County District Attorney. If you have questions about the Order, contact the DA 408-792-2300. If

4  you are in your 30-day period on a firearm, we cannot deliver it without further guidance from the

5  county. We will open again as quickly as possible, but for now we are not allowed to process

6  firearm pickups or registrations. Updates will be posted on social media and our website. Please

7

8  stay safe and healthy." An image of the Notice on Reed's Indoor Range's website is below:

9

10 

11

12

13

14

15

16

17

18

19

20

21                              *Alameda County Background*

22    74.    On or about March 16, 2020, the Public Health Department of the County of

23 Alameda issued an order directing all residents of the County to shelter in place. [8]

24

25

26  —————————————————

27 [7] http://www.reedsindoorrange.com.

28 [8] https://www.acgov.org/documents/Final-Order-to-Shelter-In-Place.pdf.

75.     Under section 3 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

76.     Under section 11 of the Order, Defendant Sheriff Ahern and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

77.     On March 31, 2020, the Public Health Department of the County of Alameda issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020.[9]

78.     Under section 5 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

79.     Under section 15 of the Order, the Defendant Sheriff Ahern and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

80.     Plaintiff Swann wishes to purchase firearms and ammunition for self-defense and defense of his home. Plaintiff Swann is not prohibited from possessing firearms or ammunition under state or federal law. Plaintiff Swann would purchase firearms and ammunition in Alameda County, but he is unable to do so as a result of the Alameda Order.

81.     On information and belief Alameda County Defendants are actively shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities

---

[9] http://www.acphd.org/media/563688/health-officer-order-20-04-shelter-in-place-20200331.pdf

that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of Alameda to close their doors and stop performing sales and transfers of firearms and ammunition.

*San Mateo County Background*

82.     On March 16, 2020, the Public Health Department of the County of San Mateo issued an order directing all residents of the County to shelter in place.[10]

83.     Under section 3 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges are not "Essential Businesses".

84.     Under section 11 of the Order, the Defendant Sheriff Bolanos and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

85.     On March 31, 2020, the Public Health Department of the County of San Mateo issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020.[11]

86.      Under section 5 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses

---

[10] https://www.smcgov.org/sites/smcgov.org/files/HO%20Order%20Shelter%20in%20Place%20 20200316.pdf.

[11] https://www.smcgov.org/sites/smcgov.org/files/Final%203-31%20Order.pdf.

described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

87.     Under section 15 of the Order, the Defendant Sheriff Bolanos and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

88.     On March 23, 2020, City Arms LLC was informed by Pacifica Police that it was required to halt all new sales of firearms and ammunition because gun shops were non-essential businesses and were required to close. Plaintiff Danilevsky was informed at that time that the store was permitted to remain open for the purpose of delivering firearms that had already been purchased, but for no other purpose. City Arms LLC was advised further that this allowance to operate in this limited capacity was temporary, and would expire on April 6, 2020 at which point City Arms LLC would be required to close its store entirely.

*Contra Costa County Background*

89.     On or about March 16, 2020, the Public Health Department of the County of Contra Costa issued an order directing all residents of the County to shelter in place.[12]

90.     Under section 3 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

91.     Under section 11 of the Order, the Defendant Sheriff Livingston and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

---

[12] https://cchealth.org/coronavirus/pdf/HO-COVID19-SIP-0316-2020.pdf.

92.     On March 31, 2020, the Public Health Department of the County of Contra Costa issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020.[13]

93.      Under section 5 of the Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

94.     Under section 15 of the Order, the Defendant Sheriff Livingston and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order.

95.     Plaintiff Goodrich wishes to purchase firearms and ammunition for self-defense, defense of his home, and for work. Plaintiff Goodrich is not prohibited from possessing firearms or ammunition under state or federal law. Plaintiff Goodrich is employed as an armored truck driver. Under the Contra Costa Order, Plaintiff Goodrich is considered an essential worker based on his profession, and in order to fulfill his duties, he requires access to firearms and ammunition. Plaintiff Goodrich would purchase the ammunition he needs for self-defense, the defense of his home, and to execute his work duties.

96.     On March 25, 2020, Plaintiffs Kaplan, Traytel, and City Arms East were informed by the Pleasant Hill Police that the store could no longer make any new sales or transfers of firearms or ammunition.

---

[13] https://www.contracosta.ca.gov/DocumentCenter/View/64727/2020-0331-Health-Officer-Order-COVID19.

97.     On March 31, 2020, in an email to Plaintiff Kaplan, the Pleasant Hill Police Department confirmed that the City were continuing to enforce a shutdown against Plaintiffs Kaplan and Traytel's City Arms East.

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

98.     Plaintiffs incorporate herein by reference paragraphs 1 through 97 as if fully set forth herein.

99.     There is an actual and present controversy between the parties.

100.    Defendants' orders, directives, policies, practices, customs, and enforcement actions prohibit law-abiding individuals from purchasing firearms and ammunition for the purpose of protecting themselves and their families (or for any other purpose). Independently and collectively, these stand as a bar on firearms acquisition, ownership, and proficiency training at shooting ranges, and thus amount to a categorical ban on and infringement of the right to keep and bear arms and the privileges and immunities of citizenship.

101.    Plaintiffs, Plaintiffs' Members and customers, and those similarly situated to them, seek to exercise their right to keep and bear arms for self-defense of themselves and their families, especially in times of crisis such as this.

102.    As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated California residents and visitors who knowingly or unknowingly are subject to the California statutes, regulations, policies, practices, and customs in question.

103.    The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and

justice justify relief to individual and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of California members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

104.    Local governments do not have the power to categorically prohibit the keeping and bearing of arms by law-abiding people, nor can they close off the channels of access by which individuals lawfully obtain, transfer, and practice proficiency and safety with firearms and ammunition.

105.    In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties.

106.    Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms.

107.    By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California.

108.    Because firearm and ammunition transfers must be facilitated by a licensed dealer, Defendants' orders, directives, policies, practices, customs, and enforcement actions amount to a ban on purchasing and transferring firearms and ammunition. As a result, law-abiding citizens who wish to comply with state laws – by submitting to, for example, background checks, waiting period

laws, in-person transfers and safety tests and demonstrations – are foreclosed from acquiring firearms and ammunition legally.

109.    Defendants' laws, orders, policies, practices, laws, enforcement actions, and omissions are untailored and irrational, and expressly allow some goods retailers to continue operating but prevent Retailer Plaintiffs and others similarly situated from operating and selling their goods to their customers and members of the public, including Individual Plaintiffs and Institutional Plaintiffs' members, thereby violating Plaintiffs', Plaintiffs' members' and customers', and others similarly situated person's rights.

110.    Individual and Retailer Plaintiffs reasonably fear that Defendants will enforce against them their respective stay-home and closure Orders and Defendants' related policies, practices, and customs in their respective jurisdictions.

111.    Institutional Plaintiffs reasonably fear that Defendants will enforce against their members – including Individual and Retailer Plaintiffs and similarly situated persons – the challenged laws, policies, practices, and customs.

112.    Defendants' laws and ongoing enforcement and threats of enforcement of their respective Orders and directives violate the Second and Fourteenth Amendments.

113.    Defendants' laws, policies, practices, customs, and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, which prevent the Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public from exercising their rights, including the purchase, sale, transfer of, and training with constitutionally protected arms, ammunition, magazines, and appurtenances – are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

1

**PRAYER FOR RELIEF**

2

WHEREFORE, Plaintiffs pray for the following relief:

3
4

1.    A declaratory judgment that the operation of firearm and ammunition product

5

manufacturers, retailers, importers, distributors, and shooting ranges are essential and must be

6

allowed to operate, and that Defendants' Orders, enforcement policies, practices, and customs that

7

individually and/or collectively prohibit the operation of licensed firearm and ammunition product

8

manufacturers, retailers, importers, distributors, and shooting ranges and thus individually and/or

9

collectively violate the Second and Fourteenth Amendments;

10
11

2.    A preliminary and permanent injunction restraining Defendants and their officers,

12

agents, servants, employees, and all persons in concert or participation with them who receive

13

notice of the injunction, from enforcing Defendants' Orders and enforcement policies, practices,

14

and customs that individually and/or collectively prohibit the operation of licensed firearm and

15

ammunition product manufacturers, retailers, importers, distributors, and shooting ranges and thus

16

individually and/or collectively violate the Second and Fourteenth Amendments;

17
18

3.    Nominal damages against Defendants;

19

4.    All other and further relief, including injunctive relief, against Defendants as

20

necessary to effectuate the Court's judgment, or as the Court otherwise deems just and equitable;

21

and,

22
23

5.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988 and any other applicable

24

law.

25

//

26

//

27

//

28

1

Respectfully submitted this 31st day of March 2020.

2

**SEILER EPSTEIN LLP**

3

4

/s/ *George M. Lee*
George M. Lee

5

6

Attorney for Plaintiffs

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF