George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Adam Kraut, Esq. (Admitted *pro hac vice*)
akraut@fpclaw.org
**FIREARMS POLICY COALITION**
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ALTMAN, an individual; RYAN GOODRICH, an individual; ALBERT LEE SWANN, an individual; ROMAN KAPLAN, an individual; YAN TRAYTEL, an individual; DMITRIY DANILEVSKY, an individual; GREG DAVID, an individual; SCOTT CHALMERS, an individual; CITY ARMS EAST LLC; CITY ARMS LLC; CUCKOO COLLECTIBLES LLC d.b.a. EDDY'S SHOOTING SPORTS; SECOND AMENDMENT FOUNDATION; CALIFORNIA GUN RIGHTS FOUNDATION; NATIONAL RIFLE ASSOCIATION OF AMERICA; CALIFORNIA ASSOCIATION OF FEDERAL FIREARMS LICENSEES, INC.; and FIREARMS POLICY COALITION, INC., | Case No. 4:20-cv-02180-JST **FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF** |

1                       Plaintiffs,

2          vs.

3    COUNTY OF SANTA CLARA,
     CALIFORNIA; LAURIE SMITH, in her
4    capacity as Sheriff of the County of Santa Clara;
     JEFFREY ROSEN, in his official capacity as
5    Santa Clara County District Attorney; SARA
     CODY, in her official capacity as Santa Clara
6    County Health Officer; CITY OF SAN JOSE,
     CALIFORNIA; SAM LICCARDO, in his
7    official capacity as Mayor of San Jose;
     EDGARDO GARCIA, in his official capacity as
8    Chief of Police for the City of San Jose; CITY
     OF MOUNTAIN VIEW, CALIFORNIA; MAX
9    BOSEL, in his official capacity as the Chief of
     Police for the City of Mountain View;
10   COUNTY OF ALAMEDA, CALIFORNIA;
     GREGORY AHERN, in his capacity as Sheriff
11   of the County of Alameda; ERICA PAN, in her
     capacity as Health Officer of the County of
12   Alameda; COUNTY OF SAN MATEO,
     CALIFORNIA; CARLOS BOLANOS, in his
13   capacity as Sheriff of the County of San Mateo;
     SCOTT MORROW in his capacity as San
14   Mateo County Health Officer; CITY OF
     PACIFICA, CALIFORNIA; DAN STEIDLE, in
15   his official capacity as the Chief of Police for
     the City of Pacifica; COUNTY OF CONTRA
16   COSTA, CALIFORNIA; DAVID
     LIVINGSTON, in his capacity as Sheriff of the
17   County of Contra Costa; CHRIS FARNITANO,
     in his capacity as Health Officer of Contra
18   Costa County; CITY OF PLEASANT HILL,
     CALIFORNIA; BRYAN HILL in his official
19   capacity as Chief of Police for the City of
     Pleasant Hill,
20

21

22                     Defendants.

23

24

25

26

27

28

Plaintiffs Janice Altman, *et al*. ("Plaintiffs"), by and through counsel of record, bring this complaint for injunctive and declaratory relief against the named Defendants, and allege as follows:

## INTRODUCTION

1. California's local governments, whether legislatively or by executive decree, cannot simply suspend the Constitution. Authorities may not, by decree or otherwise, enact and/or enforce a suspension or deprivation of constitutional liberties. And they certainly may not use a public health crisis as political cover to impose bans and restrictions on rights they do not like.

2. Firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges are essential businesses that provide essential access to constitutionally protected fundamental, individual rights.

3. If firearms and ammunition could be purchased online like other constitutionally protected artifacts, such as paper, pens, ink, and technology products that facilitate speech, then individuals could simply purchase what they need and have the items delivered to their doorsteps. But because of an onerous and complicated federal, state, and local regulatory scheme, people in California cannot exercise their Second Amendment right to keep and bear arms without going in person to such essential businesses—at least once for ammunition, and at least twice for firearms.

4. In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties. Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms.

5. By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California. Such a prohibition on the right to keep and bear arms is categorically unconstitutional.

6. The circumstances posed by the COVID-19 Novel Coronavirus outbreak present

challenges to all of us, including the government. Responding to those challenges, for example, some law enforcement officials are releasing inmates from jails.

7.     With governments having no legal duty to protect the people they serve, and with no guarantee that law enforcement can or will respond to 911 calls during this crisis or after it (let alone in time to prevent a crime), people who choose to exercise their fundamental, individual rights are not part of the crisis; rather, they are responding rationally to the impacts caused by the crisis.

8.     Such governmental action during the height of an acknowledged crisis also violates the constitutional checks and balances that are the hallmark of limited government and separation of powers. This suit challenges not only the underlying orders and enforcement policies for their blatant violations of enumerated constitutional rights, it also challenges the manner in which those policies were enacted.

9.     It is a bedrock principle of our constitutional order that legislatures may not enact overbroad, effectively bound-less laws that give unfettered discretion to executive agencies to 'figure out' the details later, while also 'passing the buck' to those executive agencies to make and enforce the policies that impact the people's lives, liberty, and property.

10.     The need for self-defense during uncertain times is precisely when Plaintiffs and Plaintiffs' members must be able to exercise their fundamental rights to keep and bear arms. The challenges we all face because of the COVID-19 Coronavirus, or any other such emergency, do not, cannot, and must not justify or excuse government infringements upon fundamental human rights. The declaratory and injunctive relief that Plaintiffs have been forced to seek through this action is necessary to uphold this bedrock principle of the United States Constitution.

## PARTIES

### *Individual Plaintiffs*

11.     Plaintiff Janice Altman is a natural person, a citizen of the United States, and a resident of the City of San Jose in the County of Santa Clara, California. Plaintiff Altman is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Altman holds a valid California Firearm Safety Certificate ("FSC"). Plaintiff

Altman is concerned about her safety and the safety of her family, wants to exercise her right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

12.     Plaintiff Ryan Goodrich is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Goodrich is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Goodrich is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

13.     Plaintiff Albert Lee Swann is a natural person, a citizen of the United States, and a resident of the County of Alameda, California. Plaintiff Swann is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Swann is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

14.     Plaintiff Roman Kaplan is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Kaplan is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Kaplan is the co-owner and operator of Plaintiff City Arms East LLC in Pleasant Hill, California. Plaintiff Kaplan is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Kaplan would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and

transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

15. Plaintiff Yan Traytel is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Traytel is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Traytel is the co-owner and operator of Plaintiff City Arms East LLC in Pleasant Hill, California. Plaintiff Traytel is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Traytel would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

16. Plaintiff Dmitriy Danilevsky is a natural person, a citizen of the United States, and a resident of the County of San Mateo, California. Plaintiff Danilevsky is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff Danilevsky is the owner and operator of Plaintiff City Arms LLC in Pacifica, California. Plaintiff Danilevsky is concerned about his safety and the safety of his customers and the public. On behalf of himself and his customers, Plaintiff Danilevsky would conduct training and education, perform FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

17. Plaintiff Greg David is a natural person, a citizen of the United States, and a resident of the County of Santa Clara, California. Plaintiff David is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state or federal law. Plaintiff David is the owner and operator of Plaintiff Cuckoo Collectibles LLC, d.b.a. Eddy's Shooting Sports in Mountain View, California. Plaintiff David is concerned about his safety and the safety of his

customers and the public. On behalf of himself and his customers, Plaintiff David would conduct training and education, perform FSC testing for, and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of his business licenses under Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

18.     Plaintiff Scott Chalmers is a natural person, a citizen of the United States, and a resident of the County of Contra Costa, California. Plaintiff Chalmers is not prohibited from possessing or acquiring arms, including firearms and ammunition, under state and federal law. Plaintiff Chalmers is concerned about his safety and the safety of his family, wants to practice and exercise his right to keep and bear arms – including firearms, ammunition, magazines, and appurtenances – and would do so, but for the reasonable and imminent fear of arrest and criminal prosecution under Defendants' laws, policies, orders, practices, customs, and enforcement, and because Defendants' orders and actions have closed firearm and ammunition retailers and ranges.

### *Retailer Plaintiffs*

19.     Plaintiff City Arms LLC ("City Arms"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Pacifica, California, a city in San Mateo County, California. Plaintiff City Arms is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff City Arms would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

20.     Plaintiff City Arms East LLC ("City Arms East"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Pleasant Hill, California, a city in Contra Costa County, California. Plaintiff City Arms East is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff City Arms East would

conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances – but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

21.     Plaintiff City Cuckoo Collectibles LLC, d.b.a. Eddy's Shooting Sports ("Eddy's"), is a limited liability corporation and holds federal, state, and local licenses to conduct the sales of arms, including firearms, ammunition, magazines, and appurtenances, in Mountain View, California, a city in Santa Clara County, California. Plaintiff Eddy's Shooting Sports is concerned about its safety and the safety of its customers and the public. On behalf of itself and its customers, Plaintiff Eddy's Shooting Sports would conduct training and education, perform California FSC testing for and issue FSC certificates to eligible persons, and sell and transfer arms – including firearms, ammunition, magazines, and appurtenances –but for the reasonable and imminent fear of criminal prosecution and loss of its licenses because of Defendants' laws, policies, orders, practices, customs, and enforcement thereof.

### *Institutional Plaintiffs*

22.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a nonprofit educational foundation incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF seeks to preserve the effectiveness of the Second Amendment through education, research, publishing, and legal action programs focused on the Constitutional right to possess firearms, and the consequences of gun control. SAF has over 650,000 members and supporters nationwide, including thousands of members in California. SAF brings this action on behalf of itself and its members. Individual Plaintiffs and Retailer Plaintiff are members of SAF.

23.     Plaintiff California Gun Rights Foundation ("CGF") is a nonprofit foundation incorporated under the laws of California with its principal place of business in Sacramento, California. CGF serves its members, supporters, and the public through educational, cultural, and judicial efforts to defend and advance Second Amendment and related rights. CGF has thousands of members and supporters in California, including members in Defendants' respective

jurisdictions and the Individual and Retailer Plaintiffs herein. The interpretation and enforcement of the Second Amendment directly impacts CGF's organizational interests, as well as the rights of CGF's members and supporters. CGF has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies, practices, and customs challenged herein. CGF brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public.

24.    Plaintiff National Rifle Association of America ("NRA") is a nonprofit corporation organized under the laws of the State of New York with its principal place of business in Fairfax, Virginia. The NRA is America's leading provider of gun-safety and marksmanship education for civilians and law enforcement. It is also an important defender of the Second Amendment to the United States Constitution. The NRA has over five million members, and its programs reach millions more. NRA's members reside both outside and within the State of California. NRA represents its members and supporters and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. NRA has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

25.    Plaintiff California Association of Federal Firearms Licensees, Inc. ("CAL-FFL") is nonprofit organization incorporated under the laws of California with its principal place of business in Sacramento, California. CAL-FFL serves its members and the public through direct and grassroots issue advocacy, regulatory input, legal efforts, and education. CAL-FFL's membership includes firearm dealers, training professionals, shooting ranges, licensed collectors, and others who participate in the firearms ecosystem. The interpretation and enforcement of the Constitution directly impacts CAL-FFL's organizational interests, as well as the rights of CAL-FFL's members and supporters. CAL-FFL has expended and diverted resources, and has been adversely and directly harmed, because of Defendants' laws, policies, practices, and customs challenged herein. CAL-FFL brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the firearm licensee industry and the public. Retailer Plaintiffs are members of CAL-FFL.

26.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a nonprofit organization incorporated under the laws of Delaware with a place of business in Sacramento, California. The purposes of FPC include defending and promoting the People's rights – especially but not limited to First and Second Amendment rights – advancing individual liberty and restoring freedom. FPC serves its members and the public through legislative advocacy, grassroots advocacy, litigation and legal efforts, research, education, outreach, and other programs. FPC has members in the State of California, including members in Defendants' respective jurisdictions and the Individual and Retailer Plaintiffs herein. FPC represents its members and supporters—who include gun owners, individuals who wish to acquire and take possession of firearms and ammunition, licensed California firearm retailers, shooting ranges, trainers and educators, and others—and brings this action on behalf of itself, its members, supporters who possess all the indicia of membership, and similarly situated members of the public. FPC has expended and diverted resources, and is adversely and directly harmed, because of Defendants' laws, policies, orders, practices, and customs challenged herein.

### *Santa Clara Defendants*

27.     Defendant County of Santa Clara, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

28.     Defendant Laurie Smith is the Sheriff of Defendant Santa Clara County, California and head of Santa Clara County Sheriff's Office. As the Sheriff, she is responsible within the County for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Smith is sued in her official capacity.

29.     Defendant Jeffrey Rosen is the District Attorney for the County of Santa Clara, California. Defendant Rosen is the lead prosecutor of Santa Clara County. He and his office possess inherent and delegated powers to execute and enforce laws, orders, policies, practices, customs and actions at issue in this lawsuit. Defendant Rosen is sued in his official capacity.

30.     Defendant Sara Cody is the Public Health Officer for the County of Santa Clara,

California. Defendant Cody is the head of the Santa Clara County Department of Public Health. The Santa Clara Department of Health is the department responsible for public health in Santa Clara County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Cody is sued in her official capacity.

31. Defendant City of San Jose, California is a local governmental entity in Santa Clara County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, polices, practices, customs, and actions at issue in this lawsuit.

32. Defendant Sam Liccardo is the Mayor of the City of San Jose, California. As Mayor, he is responsible for the direction, enforcement, and execution of the City of San Jose's laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Liccardo is sued in his official capacity.

33. Defendant Edgardo ("Eddie") Garcia is the Chief of Police for the City of San Jose, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Garcia is sued in his official capacity.

34. Defendant City of Mountain View, California is a local governmental entity in Santa Clara County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, polices, practices, customs, and actions at issue in this lawsuit.

35. Defendant Max Bosel is the Chief of Police for the City of Mountain View, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Bosel is sued in his official capacity.

### *Alameda Defendants*

36. Defendant County of Alameda, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the

meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

37. Defendant Gregory Ahern is the Sheriff of Defendant Alameda County, California and head of Alameda County Sheriff's Office. As the Sheriff, he is responsible within the County for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Ahern is sued in his official capacity.

38. Defendant Erica Pan is a Public Health Officer for the County of Alameda, California. The Alameda Health Services Department is the department responsible for public health in Alameda County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Pan is sued in her official capacity.

### *San Mateo Defendants*

39. Defendant County of San Mateo, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

40. Defendant Carlos Bolanos is the Sheriff of Defendant San Mateo County, California and head of San Mateo County Sheriff's Office. As Sheriff, he is responsible within the County for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Bolanos is sued in his official capacity.

41. Defendant Scott Morrow is a Health Officer for the County of San Mateo, California. The San Mateo Health Department is the department responsible for public health in San Mateo County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Morrow is sued in his official capacity.

42. Defendant City of Pacifica, California is a local governmental entity in San Mateo County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

43. Defendant Dan Steidle is the Chief of Police for the City of Pacifica, California.

As the Chief of Police, he is responsible within the City for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Steidle is sued in his official capacity.

### *Contra Costa Defendants*

44.     Defendant County of Contra Costa, California is a local governmental entity organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The County is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

45.     Defendant David Livingston is the Sheriff of Defendant Contra Costa County, California and head of Contra Costa County Sheriff's Office. As Sheriff, he is responsible within the County for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Livingston is sued in his official capacity.

46.     Defendant Chris Farnitano is a Public Health Officer for the County of Contra Costa, California. The Contra Costa Health Services Department is the department responsible for public health in Contra Costa County. It enforces some of the laws in the California Health and Safety Codes, including those at issue herein. Defendant Farnitano is sued in his official capacity.

47.     Defendant City of Pleasant Hill, California is a local governmental entity in Contra Costa County organized under the Constitution and laws of the State of California, possessing legal personhood within the meaning of 42 U.S.C. § 1983. The City is responsible for executing and administering its laws, orders, policies, practices, customs, and actions at issue in this lawsuit.

48.     Defendant Max Bryan Hill is the Chief of Police for the City of Pleasant Hill, California. As the Chief of Police, he is responsible within the City for the enforcement and execution of laws, orders, policies, practices, customs, and actions at issue in this lawsuit. Defendant Hill is sued in his official capacity.

### JURISDICTION AND VENUE

49.     This Court has jurisdiction over all claims for relief pursuant to 28 U.S.C. §§ 1331, 1343, 2201, and 2202, and 42 U.S.C. §§ 1983 and 1988, as this action seeks to redress the deprivation under color of the laws, statutes, ordinances, regulations, customs, and usages of the

State of California, of the rights, privileges or immunities secured by the United States Constitution.

50. Venue lies in this Court under 28 U.S.C. § 1391, as the events giving rise to Plaintiffs' causes of action arose or exist in this District in which the action is brought.

## STATEMENT OF FACTS COMMON TO ALL CLAIMS

### *Constitutional Background*

51. The Second Amendment to the United States Constitution provides:

> A well-regulated Militia being necessary to the security of a free State, the right of the people to keep and bear Arms shall not be infringed.

52. The Second Amendment "guarantee[s] the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). And it "elevates above all other interests the right of law-abiding, responsible citizens to use arms in defense of hearth and home." *Id* at 635.

53. The Second Amendment is fully applicable to the States through the Fourteenth Amendment's Due Process and Privileges or Immunities Clauses. *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010); *id*. at 805 (Thomas, J., concurring). In *McDonald*, the Supreme Court held "that the Second Amendment right is fully applicable to the States." *Id*. at 750. And Justice Thomas further held that the "right to keep and bear arms is a privilege of American citizenship that applies to the States through the Fourteenth Amendment's Privileges or Immunities Clause." *Id*. at 806.

54. The Fifth Amendment to the United States Constitution provides, in pertinent part: "No person shall be. . .deprived of life, liberty or property, without due process of law. . . ."

//

//

//

//

55. The Fourteenth Amendment to the United States Constitution provides in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

56. Individuals have a right to due process of the law under the Fifth and Fourteenth Amendments to the United States Constitution, the fundamental precepts which of protect them against the enforcement of vague, arbitrary and capricious, and overbroad laws.

57. Individuals have a right to keep and bear arms, including but not limited to, buying, selling, transferring, transporting, carrying, and practicing safety and proficiency with firearms, ammunition, magazines, and appurtenances, under the Second and Fourteenth Amendments to the United States Constitution.

58. In 2008, the United States Supreme Court held that the District of Columbia's requirement that permitted firearms within the home, but required that said firearms in the home be kept inoperable, made it impossible for citizens to use firearms for the core lawful purpose of self-defense and was hence unconstitutional. *District of Columbia v. Heller*, 554 U.S. 570, 630 (2008).

59. The "central" – but not only – holding of the Supreme Court in *Heller* was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *McDonald*, 561 U.S. at 780. "The very enumeration of the right takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon." *Heller*, 554 U.S. at 634.

60. The fundamental right to keep and bear loaded, operable firearms in the home includes the right of legally eligible individuals to lawfully acquire and take possession of firearms, ammunition, magazines, and appurtenances.

61. Individuals have a right to buy, sell, transfer, and practice with arms, including but not limited to, firearms, ammunition, magazines, and required appurtenances.

62.     Licensed firearm and ammunition retailers and shooting ranges are necessary to individuals' lawful acquisition of firearms and ammunition, including but not limited to complying with federal and state background check requirements, due to the onerous and complicated web of regulatory schemes that prohibit the exercise of the constitutional right to keep and bear arms without going in person to these essential businesses – at least once for ammunition and at least twice for firearms.

### *Statutory Background*

63.     In California, a violation of a statute is a misdemeanor unless specified to be punishable otherwise. California Penal Code Prelim. Prov. 19.4 provides: "When an act or omission is declared by a statute to be a public offense and no penalty for the offense is prescribed in any statute, the act or omission is punishable as a misdemeanor."

64.     Under California law and regulations, individuals must acquire modern firearms from duly licensed firearm retailers. *See generally* Penal Code sections 27545; 28050, et seq.

65.     Under California law and regulations, and with few very limited exceptions, individuals must acquire or otherwise transfer and take possession of ammunition from duly licensed firearm and/or ammunition retailers. *See generally* Penal Code sections 30342, et seq.; 30370, et seq.

66.     Under California law and regulations, individuals must acquire a valid Firearm Safety Certificate in order to acquire and take possession of firearms. *See generally* Penal Code section 26840.

67.     Government Code section 26620 provides: "The office of county director of emergency services shall be held ex officio by the county sheriff."

68.     Government Code section 41601 provides:

> For the suppression of riot, public tumult, disturbance of the peace, or resistance against the laws or public authorities in the lawful exercise of their functions, and for the execution of all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease, the chief of police has the powers conferred upon sheriffs by general law and in all respects is entitled to the same protection.

69. Government Code section 101029 provides:

> The sheriff of each county, or city and county, may enforce within the county, or the city and county, all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. Every peace officer of every political subdivision of the county, or city and county, may enforce within the area subject to his or her jurisdiction all orders of the local health officer issued for the purpose of preventing the spread of any contagious, infectious, or communicable disease. This section is not a limitation on the authority of peace officers or public officers to enforce orders of the local health officer. When deciding whether to request this assistance in enforcement of its orders, the local health officer may consider whether it would be necessary to advise the enforcement agency of any measures that should be taken to prevent infection of the enforcement officers.

70. Government Code section 101030 provides:

> The county health officer shall enforce and observe in the unincorporated territory of the county, all of the following:
> (a) Orders and ordinances of the board of supervisors, pertaining to the public health and sanitary matters.
> (b) Orders, including quarantine and other regulations, prescribed by the department.
> (c) Statutes relating to public health.

71. As shown below, County and County Health Officer Defendants' Orders, enforced by Defendant sheriffs and police chiefs, among others, commonly provide:

> Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

72. Under Defendants' laws, Orders, and enforcement policies, practices, customs, and actions it is a crime for individuals to leave their homes and go to and from, e.g., firearms and ammunition retailers and shooting ranges in order to comply with state laws regarding the FSC certificate requirement, as well as federal and state laws regarding the purchase and transfer of firearms and ammunition. And under the Defendants' Orders and enforcement policies, it is a crime

for, e.g., firearm and ammunition retailers, shooting ranges, and FSC test service providers, including Plaintiffs herein, to operate them.

### State Orders and Federal CISA Guidance Background

73. On or about March 4, 2020, Governor Newsom proclaimed a State of Emergency as a result of COVID-19.

74. On March 17, 2020, Governor Newsom told reporters that his declaring martial law was an option if he feels it necessary.[1]

75. On March 19, 2020, Governor Gavin Newsom signed Executive Order N-33-20,[2] directing all individuals living in California to "stay home or at their place of residence except as needed to maintain continuity of operations of the federal critical infrastructure sectors." Executive Order N-33-20 is in place until further notice.

76. The Governor's N-33-20 directed all California residents "to heed" the directives of the State Public Health Officer, Sonia Angell, and incorporated into the Executive Order Director Angell's Order of the same date.[3]

77. Director Angell's Order states that all people in California must stay home people "except as needed to maintain continuity of operations of the federal critical infrastructure sectors, as outlined at https://www.cisa.gov/identifying-critical-infrastructure-during-covid-19."

78. An express purpose of Angell's Order is to "establish consistency across" – i.e., throughout – "the state."

79. Notably, on March 28, 2020, the Department of Homeland Security, Cyber-

---

[1] "We have the ability to do martial law . . . if we feel the necessity." https://www.independent.co.uk/news/world/americas/coronavirus-california-martial-law-shelter-in-place-lockdown-army-a9410256.html.

[2] Executive Department, State of California, Governor Gavin Newsom Executive Order N-33-20, https://www.gov.ca.gov/wp-content/uploads/2020/03/3.19.20-attested-EO-N-33-20-COVID-19-HEALTH-ORDER.pdf.

[3] Order of the State Public Health Officer, Mar. 19, 2020, https://www.cdph. ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/Health%20Order%203.19. 2020.pdf.

Infrastructure Division ("CISA"), issued an updated "ADVISORY MEMORANDUM ON IDENTIFICATION OF ESSENTIAL CRITICAL INFRASTRUCTURE WORKERS DURING COVID-19 RESPONSE"[4] under its Web page for "Guidance on the Essential Critical Infrastructure Workforce" during the COVID-19 pandemic.[5] While the CISA guidance is "advisory" in nature, its findings and conclusions are inherently entitled to great weight in this context, particularly since they were "developed, in collaboration with other federal agencies, State and local governments, and the private sector" for the specific purpose of "help[ing] State, local, tribal and territorial officials as they work to protect their communities, while ensuring continuity of functions critical to public health and safety, as well as economic and national security." To that very end, CISA specifically determined that "[w]orkers supporting the operation of firearm or ammunition product manufacturers, retailers, importers, distributors, and shooting ranges" fall squarely within the "critical infrastructure workforce."

### *Santa Clara County Background*

80.    On or about March 16, 2020, the Public Health Department of the County of Santa Clara issued an order directing all residents of the County to shelter in place until April 7, 2020 (the "March 16 Order").[6]

81.    Under section 3 of the March 16 Order, all non-essential businesses were ordered to cease all activities at facilities located within the County. There were twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges were not "Essential Businesses."

82.    Under section 11 of the March 16 Order, the Defendant Sheriff Smith and all chiefs of police of the County were tasked with the enforcement of the provisions set forth in the Order.

---

[4]    At https://bit.ly/cisa-guidance-2020-3-28.

[5]    Guidance on the Essential Critical Infrastructure Workforce, https://www.cisa.gov/publication/guidance-essential-critical-infrastructure-workforce.

[6]    https://www.sccgov.org/sites/phd/DiseaseInformation/novel-coronavirus/Documents/03-16-20-Health-Officer-Order-to-Shelter-in-Place.pdf.

83.     On March 31, 2020, the Public Health Department of the County of Santa Clara issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020 (the "March 31 Order").[7]

84.     Under section 5 of the March 31 Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

85.     Under section 15 of the March 31 Order, the Defendant Sheriff Smith and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order. Section 15 of the March 31 Order states:

> Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

86.     As reported by San Jose Mercury News, Defendant Mayor Liccardo said that "one thing we cannot have is panic buying of guns."[8] Not only do the City of San Jose Defendants', including Defendant Mayor Liccardo's, policies and practices violate the Constitution, they do so with clear animus towards firearm and ammunition retailers, shooting ranges, and the individual people who would access and use them for lawful purposes including self-defense in their home.

87.     Likewise, Defendant Santa Clara County District Attorney Rosen takes a similar unconstitutional and ideologically driven approach to banning licensed firearm and ammunition

---

[7]     https://www.sccgov.org/sites/phd/DiseaseInformation/novel-coronavirus/Pages/order-health-officer-033120.aspx.

[8]     https://www.mercurynews.com/2020/03/18/coronavirus-san-jose-orders-gun-store-to-close-in-one-of-first-tests-of-essential-under-shelter-order/.

retailers and ranges. On the website for Reed's Indoor Range,[9] a well-known shooting range, retailer, and training facility in Santa Clara County, a prominent Notice (shown in Image 1, below) states:

> "Closed by order of the Santa Clara County District Attorney. If you have questions about the Order, contact the DA 408-792-2300. If you are in your 30-day period on a firearm, we cannot deliver it without further guidance from the county. We will open again as quickly as possible, but for now we are not allowed to process firearm pickups or registrations. Updates will be posted on social media and our website. Please stay safe and healthy."

**Image 1**



88.    Plaintiffs allege on information and belief that the March 16 and March 31 Orders and lists of essential businesses were made by executive decree, without the decision of any legislative body, and further, that even if a legislative body had enacted the Orders, the Orders and

---

9      http://www.reedsindoorrange.com.

FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF | CASE NO. 4:20-cv-02180-JST

enforcement of them violate Plaintiffs' constitutional rights.

89.    On March 30, 2020, Plaintiffs David and Eddy's Shooting Sports received email communication from Defendant Mountain View Police Chief Max Bosel. In the email, Defendant Chief Bosel advised Plaintiff David that Plaintiff Eddy's Shooting Sports was required to close entirely, deemed non-essential, and would not be permitted to operate and sell any merchandise to law-abiding individual adults legally eligible and constitutionally entitled to acquire such items.

90.    On information and belief, Santa Clara Defendants were actively enforcing the March 16 Order and are now actively enforcing the March 31 Order, shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of Santa Clara to close their doors and stop performing sales and transfers of firearms and ammunition.

91.    Plaintiff Altman would like to purchase and take possession of firearms and ammunition for her self-defense and other lawful purposes. Plaintiff Altman is concerned that as a result of the COVID-19 crisis, Santa Clara County has released an unknown number of prison inmates back onto the streets of Santa Clara County. Plaintiff Altman is not prohibited from possessing firearms under state or federal law. Furthermore, Plaintiff Altman possesses a valid California FSC. Because Plaintiff Altman has a valid FSC, she can take possession of a purchased firearm and ammunition upon the completion of a background check. Plaintiff Altman resides minutes away from Reed's Indoor Range, a well-known firearm and ammunition retailer, indoor shooting range, and training facility shuttered by the Santa Clara District Attorney, according to the retailer's Website. Due to Defendants' Orders and enforcement actions, she is unable to purchase and take possession of firearms and ammunition. Plaintiff Altman cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, Plaintiff Altman, like Plaintiffs' members and customers and others similarly situated to them, is being prevented from exercising her right to keep and bear loaded, operable firearms for self-defense, including in the home.

92.    Defendants' Orders, policies, practices, customs, and enforcement actions have and

continue to directly or effectively prohibit the travel to and from, and operation of, firearms and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test service providers, and thereby deny individuals the right to acquire constitutionally protected goods and services necessary to the exercise of their fundamental rights.

*Alameda County Background*

93.     On or about March 16, 2020, the Public Health Department of the County of Alameda issued an order directing all residents of the County to shelter in place (the "March 16 Order").[10]

94.     Under section 3 of the March 16 Order, all non-essential businesses were ordered to cease all activities at facilities located within the County. There were twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the March 16 Order's section 10(f), firearm and ammunition retailers and ranges were not "Essential Businesses."

95.     Defendant Sheriff Ahern and all chiefs of police of the County were tasked with the enforcement of the provisions set forth in the Order.

96.     On March 31, 2020, the Public Health Department of the County of Alameda issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020 (the "March 31 Order").[11]

97.     Under section 5 of the March 31 Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

98.     Under section 15 of the March 31 Order, the Defendant Sheriff Ahern and all chiefs

---

[10]   https://www.acgov.org/documents/Final-Order-to-Shelter-In-Place.pdf.

[11]   http://www.acphd.org/media/563688/health-officer-order-20-04-shelter-in-place-20200331.pdf.

of police of the County are tasked with the enforcement of the provisions set forth in the Order. Section 15 of the March 31 Order states:

> Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

99. On information and belief, Alameda Defendants were actively enforcing the March 16 Order and are now actively enforcing the March 31 Order, shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of Alameda to close their doors and stop performing sales and transfers of firearms and ammunition.

100. Plaintiffs allege on information and belief that the March 16 and March 31 Orders and lists of essential businesses were made by executive decree, without the decision of any legislative body, and further, that even if a legislative body had enacted the Orders, the Orders and enforcement of them violate Plaintiffs' constitutional rights.

101. Plaintiff Swann wishes to purchase and take possession of firearms and ammunition for self-defense and defense of his home. Plaintiff Swann is not prohibited from possessing firearms or ammunition under state or federal law. Plaintiff Swann would purchase firearms and ammunition in Alameda County. However, due to Defendants' Orders and enforcement actions, he is unable to purchase a self-defense firearm and ammunition. Plaintiff Swann cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, Plaintiff Swann and others similarly situated, including Plaintiffs' members and customers, are being prevented from exercising their right to keep and bear loaded, operable firearms for self-defense, including in the home.

102. Defendants' Orders, policies, practices, customs, and enforcement actions have and continue to directly or effectively prohibit the travel to and from, and operation of, firearms

and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test service providers, and thereby deny individuals the right to acquire constitutionally protected goods and services necessary to the exercise of their fundamental rights.

### *San Mateo County Background*

103.    On March 16, 2020, the Public Health Department of the County of San Mateo issued an order directing all residents of the County to shelter in place (the "March 16 Order").[12]

104.    Under section 3 of the March 16 Order, all non-essential businesses were ordered to cease all activities at facilities located within the County. There were twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges were not "Essential Businesses."

105.    Under section 11 of the March 16 Order, the Defendant Sheriff Bolanos and all chiefs of police of the County were tasked with the enforcement of the provisions set forth in the Order.

106.    On March 31, 2020, the Public Health Department of the County of San Mateo issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020 (the "March 31 Order").[13]

107.     Under section 5 of the March 31 Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the March 31 Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

108.    Under section 15 of the March 31 Order, the Defendant Sheriff Bolanos and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the

---

[12] https://www.smcgov.org/sites/smcgov.org/files/HO%20Order%20Shelter%20in%20Place%202020200316.pdf.

[13] https://www.smcgov.org/sites/smcgov.org/files/Final%203-31%20Order.pdf.

Order. Section 15 of the March 31 Order states:

> Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

109. On information and belief, San Mateo Defendants were actively enforcing the March 16 Order and are now actively enforcing the March 31 Order, shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of San Mateo to close their doors and stop performing sales and transfers of firearms and ammunition.

110. Plaintiffs allege on information and belief that the March 16 and March 31 Orders and lists of essential businesses were made by executive decree, without the decision of any legislative body, and further, that even if a legislative body had enacted the Orders, the Orders and enforcement of them violate Plaintiffs' constitutional rights.

111. On March 23, 2020, Plaintiffs Danilevsky and City Arms LLC were informed by Defendants City of Pacifica and Chief Steidle's Police Department that they were required to halt all new sales of firearms and ammunition because firearm and ammunition retailers, including them, were non-essential businesses and were required to cease all operations and close their doors entirely on April 6, 2020.

112. Due to Defendants' Orders and enforcement actions, legally eligible adults are unable to purchase a self-defense firearm and ammunition in San Mateo County. Regular adults cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, legally eligible individual adults, including Plaintiffs' members and customers, are being prevented from exercising his right to keep and bear loaded, operable firearms for self-defense, including in the home.

113. Defendants' Orders, policies, practices, customs, and enforcement actions have and

continue to directly or effectively prohibit the travel to and from, and operation of, firearms and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test service providers, and thereby deny individuals the right to acquire constitutionally protected goods and services necessary to the exercise of their fundamental rights.

*Contra Costa County Background*

114.    On or about March 16, 2020, the Public Health Department of the County of Contra Costa issued an order directing all residents of the County to shelter in place (the "March 16 Order").[14]

115.    Under section 3 of the March 16 Order, all non-essential businesses were ordered to cease all activities at facilities located within the County. There were twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 10(f), firearm and ammunition retailers and ranges were not "Essential Businesses."

116.    Under section 11 of the March 16 Order, Defendant Sheriff Livingston and all chiefs of police of the County were tasked with the enforcement of the provisions set forth in the Order.

117.    On March 31, 2020, the Public Health Department of the County of Contra Costa issued an additional order superseding the March 16, 2020 order and directing all residents of the County to continue to shelter in place until May 3, 2020 (the "March 31 Order").[15]

118.    Under section 5 of the March 31 Order, all non-essential businesses are ordered to cease all activities at facilities located within the County. There are twenty-one categories of businesses described as being essential and therefore exempt from the order to close. But under the Order's section 13(f), firearm and ammunition retailers and ranges are not "Essential Businesses."

---

[14]    https://cchealth.org/coronavirus/pdf/HO-COVID19-SIP-0316-2020.pdf.

[15]    https://www.contracosta.ca.gov/DocumentCenter/View/64727/2020-0331-Health-Officer-Order-COVID19.

119.    Under section 15 of the Order, the Defendant Sheriff Livingston and all chiefs of police of the County are tasked with the enforcement of the provisions set forth in the Order. Section 15 of the March 31 Order states:

> Pursuant to Government Code sections 26602 and 41601 and Health and Safety Code section 101029, the Health Officer requests that the Sheriff and all chiefs of police in the County ensure compliance with and enforce this Order. The violation of any provision of this Order constitutes an imminent threat and menace to public health, constitutes a public nuisance, and is punishable by fine, imprisonment, or both.

120.    On information and belief, Contra Costa Defendants were actively enforcing the March 16 Order and are now actively enforcing the March 31 Order, shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms by forcing firearm and ammunition product manufacturers, retailers, importers, distributors, and shooting ranges within the County of Contra Costa to close their doors and stop performing sales and transfers of firearms and ammunition.

121.    Plaintiffs allege on information and belief that the March 16 and March 31 Orders and lists of essential businesses were made by executive decree, without the decision of any legislative body, and further, that even if a legislative body had enacted the Orders, the Orders and enforcement of them violate Plaintiffs' constitutional rights.

122.    On March 25, 2020, Plaintiffs Kaplan, Traytel, and City Arms East were informed by the Pleasant Hill Police that the store could no longer make any new sales or transfers of firearms or ammunition.

123.    On March 31, 2020, in an email to Plaintiff Kaplan, an officer of Defendant' Police Chief Hill's Pleasant Hill Police Department confirmed that they were continuing to enforce a closure order and shut down against Plaintiffs' Kaplan and Traytel's Plaintiff City Arms East.

124.    Plaintiff Goodrich wishes to purchase and take possession of firearms and ammunition for self-defense, defense of his home, and for work. Plaintiff Goodrich is not prohibited from possessing firearms or ammunition under state or federal law. Plaintiff Goodrich is employed as an armored truck driver. Under the Contra Costa Order, Plaintiff Goodrich is

considered an essential worker based on his profession, and in order to fulfill his duties, he requires access to firearms and ammunition. However, due to Defendants' Orders and enforcement actions, he is unable to purchase a self-defense firearm and ammunition. Plaintiff Goodrich cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, Plaintiff Goodrich and others similarly situated, including Plaintiffs' members and customers, are being prevented from exercising their right to keep and bear loaded, operable firearms for self-defense, including in the home.

125.    Plaintiff Chalmers wishes to purchase and take possession of firearms and ammunition for self-defense and defense of his home. Plaintiff Chalmers is not prohibited from possessing firearms or ammunition under state or federal law. Plaintiff Chalmers would purchase firearms and ammunition and pick up a previously purchased firearm in Contra Costa County. However, due to Defendants' Orders and enforcement actions, he is unable to purchase a self-defense firearm and ammunition or pick up his previously purchased firearm or ammunition. Plaintiff Chalmers cannot purchase either firearms or ammunition except through a licensed firearms dealer and/or licensed ammunition vendor under California law. Thus, Plaintiff Chalmers and others similarly situated, including Plaintiffs' members and customers, are being prevented from exercising their right to keep and bear loaded, operable firearms for self-defense, including in the home.

126.    Defendants' Orders, policies, practices, customs, and enforcement actions have and continue to directly or effectively prohibit the travel to and from, and operation of, firearms and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test service providers, and thereby deny individuals the right to acquire constitutionally protected goods and services necessary to the exercise of their fundamental rights.

//

//

//

//

//

**COUNT ONE**
**DEPRIVATION OF CIVIL RIGHTS**
**RIGHT TO KEEP AND BEAR ARMS**
**U.S. CONST., AMENDS. II AND XIV, 42 U.S.C. § 1983**

127.     Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

128.     There is an actual and present controversy between the parties.

129.     As to all claims made in a representative capacity herein, there are common questions of law and fact that substantially affect the rights, duties, and liabilities of many similarly-situated California residents and visitors who knowingly or unknowingly are subject to the statutes, Orders, and enforcement policies, practices, and customs in question.

130.     Defendants' orders, directives, policies, practices, customs, and enforcement actions prohibit law-abiding individuals from purchasing firearms and ammunition for the purpose of protecting themselves and their families (or for any other purpose). Independently and collectively, these stand as a bar on firearms acquisition, ownership, and proficiency training at shooting ranges, and thus amount to a categorical ban on and infringement of the right to keep and bear arms and the privileges and immunities of citizenship.

131.     Plaintiffs, Plaintiffs' Members and customers, and those similarly situated to them, seek to exercise their right to keep and bear arms for self-defense of themselves and their families, especially in times of crisis such as this.

132.     The relief sought in this action is declaratory and injunctive in nature, and the action involves matters of substantial public interest. Considerations of necessity, convenience, and justice justify relief to individual and institutional Plaintiffs in a representative capacity. Further, to the extent it becomes necessary or appropriate, the institutional Plaintiffs are uniquely able to communicate with and provide notice to their thousands of California members and constituents who are or would be party to any identifiable class of individuals for whose benefit this Court may grant such relief.

133.     Local governments do not have the power to categorically prohibit the keeping and bearing of arms by law-abiding people, nor can they close off the channels of access by which

individuals lawfully obtain, transfer, and practice proficiency and safety with, firearms and ammunition.

134. Arbitrariness and animus exists within the Defendants' Orders and enforcement actions, as the Orders classify as "essential" a variety of businesses which have no clear connection to *essential* goods and services (let alone expressly constitutionally protected goods and services), particularly in a time of crisis.

135. For example, "convenience stores, and other establishments engaged in the retail sale of unprepared food, canned food, dry goods, non-alcoholic beverages, fresh fruits and vegetables, pet supply, fresh meats, fish, and poultry, as well as hygienic products and household consumer products necessary for personal hygiene or the habitability, sanitation, or operation of residences" are deemed to expressly fall within this protected category of "Essential" businesses. So too are "auto-supply" stores, businesses that provide "that provide food, shelter, and social services, and other necessities of life for economically disadvantaged or otherwise needy individuals," landscapers, gardeners, "[b]icycle repair and supply shops," and hardware stores.

136. But, according to Defendants, firearm and ammunition retailers and shooting ranges are not essential, even though their connection to the *essentials* of life in a crisis – securing the fundamental right of defense of the self and home through all lawful means – is crystal clear, as highlighted in CISA's published guidelines and the Constitution itself.

137. In California, individuals are required to purchase and transfer firearms and ammunition through state and federally licensed dealers in face-to-face transactions or face serious criminal penalties.

138. Shuttering access to arms, the ammunition required to use those arms, and the ranges and education facilities that individuals need to learn how to safely and competently use arms, necessarily closes off the Constitutional right to learn about, practice with, and keep and bear those arms.

139. By forcing duly licensed, essential businesses to close or eliminate key services for the general public, government authorities are foreclosing the only lawful means to buy, sell, and transfer firearms and ammunition available to typical, law-abiding individuals in California.

140.     Because firearm and ammunition transfers must be facilitated by a licensed dealer, Defendants' orders, directives, policies, practices, customs, and enforcement actions amount to a ban on purchasing and transferring firearms and ammunition. As a result, law-abiding citizens who wish to comply with state laws – by submitting to, for example, background checks, waiting period laws, in-person transfers and safety tests and demonstrations – are foreclosed from acquiring firearms and ammunition legally.

141.     Defendants' laws, orders, policies, practices, customs, enforcement actions, and omissions are untailored and irrational, and expressly allow some goods retailers to continue operating but prevent Retailer Plaintiffs and others similarly situated from operating and selling their goods to their customers and members of the public, including Individual Plaintiffs and Institutional Plaintiffs' members, thereby violating Plaintiffs', Plaintiffs' members' and customers', and others similarly situated person's rights.

142.     Individual and Retailer Plaintiffs reasonably fear that Defendants will enforce against them their respective stay-home and closure Orders and Defendants' related laws, policies, practices, and customs in their respective jurisdictions.

143.     Institutional Plaintiffs reasonably fear that Defendants will enforce against their members – including Individual and Retailer Plaintiffs and similarly situated persons – the challenged laws, policies, practices, and customs.

144.     Defendants' laws and ongoing enforcement and threats of enforcement of their respective Orders and directives violate the Second and Fourteenth Amendments.

145.     Defendants' laws, orders, policies, practices, customs, and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, which prevent the Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public from exercising their rights, including the purchase, sale, transfer of, and training with constitutionally protected arms, ammunition, magazines, and appurtenances, as well as their right and ability to travel to, access, and use them to acquire constitutionally protected goods and services, are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

146. To the extent Defendants may have or will eliminate, amend, or cease enforcing any of the laws, orders, policies, practices, customs, or enforcement actions at issue, or to the extent they may at some time claim to have done so, any such law, order, policy, practice, custom, and/or enforcement action has already resulted in a constitutionally significant injury of the same nature while in effect, which is itself actionable under 42 U.S.C. § 1983, and, when coupled with the ongoing and continuing unconstitutional violations set out herein, also establish a sustaining violation warranting the relief sought.

**COUNT TWO**
**DEPRIVATION OF CIVIL RIGHTS**
**DUE PROCESS**
**U.S. CONST., AMENDS. V AND XIV, 42 U.S.C. § 1983**

147. Plaintiffs incorporate herein by reference the foregoing paragraphs as if fully set forth herein.

148. There is an actual and present controversy between the parties.

149. Defendants' orders, policies, practices, customs, and enforcement actions are arbitrary and capricious, overbroad, and violate Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the publics' right to due process of law.

150. Plaintiffs are comprised of individuals eligible to acquire and possess firearms and ammunition, as well as duly licensed firearm and ammunition retailers, and institutional entities representing Plaintiffs and other individuals who wish to purchase, take possession of, and practice proficiency with arms, including firearms, ammunition, magazines, and appurtenances, but are precluded from doing so without reasonable fear of criminal prosecution as a direct result of the unconstitutionally vague, arbitrary and capricious, and overbroad laws, orders, policies, practices, customs, and enforcement actions by Defendants in this case.

151. Retailer Plaintiffs, and others similarly situated, are firearms dealers supplying retail sales and services for self-defense and law enforcement (itself an essential service). These sales include items like firearms, ammunition, accessories, appurtenances, survival gear, and other consumer products both at retail and online (including shipping). The services include those that

1  are mandated by state law to effect firearm transfers, such as the initiation of background checks,

2  administration and collection of personal identifying data (including fingerprints), administration

3  of waiting period laws, administration of firearm safety tests, and safe handling demonstrations,

4  all of which must be conducted in person pursuant to state law.

5      152.   These same Retailer Plaintiffs fall within the essential meaning of "Essential

6  Businesses" definitions in the Defendants' orders, and within any other reasonable definition of

7  that term, because they are establishments engaged in the retail sale of household consumer

8  products necessary for maintaining the safety of its residents, including the sale or transfer of

9  pistols, rifles, shotguns, ammunition, accessories, and components necessary for the defense of

10  their home, selves, and defense of others. They are service providers who provide products such

11  as firearms, ammunition, and servicing of same that are needed to maintain the safety and essential

12  operation of residences (home and personal defense) and other essential businesses. They are

13  businesses that provide goods to residences and essential businesses. They are, in every meaningful

14  sense, "essential," as CISA has recognized.

15      153.   However, the Defendants' orders and enforcement actions deprive and/or fail to

16  accord these business such status; they do not define critical terms; they encompass protected and

17  non-protected actions; they omit definitions of key terms; they operate as complete bans; they do

18  not require specific intent to commit an unlawful act; and they permit and encourage arbitrary and

19  erratic arrests and convictions with too much discretion committed to law enforcement. Their

20  vagueness and overbreadth run afoul of the due process clause because the subject Orders fail to

21  give adequate guidance to those who would be law-abiding, to advise them of the nature of the

22  offense with which they may be charged, or to guide courts in trying those who are accused of

23  violating such orders. Plaintiffs, including retailers and consumers, cannot be required to guess at

24  the meaning of such orders and whether they fall within the nebulous terms and lists purportedly

25  defining what is and is not "essential." Defendants' standard-less standards leave Plaintiffs, and

26  all those similarly situated, subject to whimsical, *ad hoc* determinations that they do not satisfy

27  whatever Defendants may deem sufficiently "essential" at any given moment in time. And any

28  such determination brings with it the prosecutorial hammers of law enforcement. As a direct result,

the Defendants' orders and enforcement policies must be invalidated on their face and as applied.

154.    This vague, arbitrary and capricious classification scheme of the Defendants is made even more constitutionally egregious because it bypassed the constitutionally authorized method for enacting laws in America. Legislatures are supposed to enact laws. Executive agencies are supposed to enforce those laws. Plaintiffs contend that even if a legislative body had made these irrational and constitutionally repugnant rules, they would be invalid. And while the constitutional harms that arise under the facts of this case are not made more (or less) illegal because of the violation of separation of powers, that harm arises from both the substance of unconstitutional polices, and also from the process that gave rise to those policies.

155.    Defendants' laws and ongoing enforcement and threats of enforcement of their various orders and directives against the Plaintiffs, the Plaintiffs' members and customers, and similarly situated members of the public, as well as their ongoing policies and practices, are unconstitutionally vague, arbitrary and capricious, overly-broad, fail to provide adequate notice, and place Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public at risk of serious criminal and civil liability, including arrest, prosecution, loss of rights, fines, and, with respect to the Retailer Plaintiffs, loss of their licenses, as they can neither determine the meaning of nor conform their conduct to the standard-less standards imposed by Defendants' orders and actions. Defendants' orders and actions violate the Fifth and Fourteenth Amendment rights of Plaintiffs, Plaintiffs' members and customers, and similarly situated members of the public and are thus causing injury and damage that is actionable under 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.    A declaratory judgment that the Defendants' Orders and laws, enforcement policies, practices, customs, and actions individually and collectively: (1) prohibit the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers; (2) deny individuals the right and ability to travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire,

take possession of, and practice proficiency with constitutionally protected items; (3) deny individuals the right and ability to travel to and from, and operate, firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers so that individuals can acquire, take possession of, and practice proficiency with constitutionally protected items; (4) deny individuals fundamental due process of law and adequate notice by imposing unconstitutionally vague, arbitrary and capricious, and overly-broad standards; and, (5) violate the Second, Fifth, and Fourteenth Amendments to the United States Constitution;

2. A preliminary and permanent injunction restraining Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing Defendants' Orders and laws, enforcement policies, practices, customs, and actions that individually and collectively: (1) prohibit the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers; (2) deny individuals the right and ability to travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items; (3) deny individuals the right and ability to travel to and from, and operate, firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers so that individuals can acquire, take possession of, and practice proficiency with constitutionally protected items; (4) deny individuals fundamental due process of law and adequate notice by imposing unconstitutionally vague, arbitrary and capricious, and overly-broad standards; and, (5) violate the Second, Fifth, and Fourteenth Amendments to the United States Constitution;

3. Nominal damages[16] against all Defendants;

_____

[16] Plaintiffs herein give notice that pre-litigation investigation is continuing in this urgent and expedited matter and that this complaint may be further amended to add additional claims and requests for relief, including but not limited to actual damages, once the facts are more fully developed. Additionally, counsel for the institutional plaintiffs are continuing to investigate the claims of additional potential parties with substantially similar claims who may also suffer constitutional and economic damages as a result of the individual and/or collective orders and/or enforcement actions of Defendants named herein.

1    4.    All other and further legal and equitable relief, including injunctive relief, against

2  Defendants as necessary to effectuate the Court's judgment, or as the Court otherwise deems just

3  and equitable; and,

4    5.    Attorney's fees, expert fees, and costs pursuant to 42 U.S.C. § 1988 and any other

5  applicable law.

6    Respectfully submitted this 10th day of April 2020.

7                    **SEILER EPSTEIN LLP**

8

9                    /s/ *George M. Lee*
                    George M. Lee

10                   Attorney for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28