George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Adam Kraut, Esq. (Admitted *pro hac vice*)
akraut@fpclaw.org
**FIREARMS POLICY COALITION**
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ALTMAN, an individual, et al.<br><br>              Plaintiffs,<br>     vs.<br><br>COUNTY OF SANTA CLARA, CALIFORNIA, et al.<br><br>              Defendants. | Case No. 4:20-cv-02180-JST<br><br>**SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:     May 20, 2020<br>Time:    2:00 p.m.<br>Judge:   Hon. Jon S. Tigar |

//
//
//
//

## I.   INTRODUCTION

Plaintiffs Janice Altman, et al. hereby submit the following supplemental brief respecting the question of mootness.

## II.   SUPPLEMENTAL FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their initial complaint in this matter on March 31, 2020. Plaintiffs filed their First Amended Complaint (FAC) (ECF 19) and Application for TRO, and/or in the Alternative, Motion for Issuance of a Preliminary Injunction (ECF No. 20) on April 10, 2020.

Plaintiffs' FAC seeks, *inter alia*, "[a] preliminary and permanent injunction restraining Defendants [] from enforcing Defendants' Orders *and laws, enforcement policies, practices, customs, and actions that individually and collectively[] . . . deny individuals the right and ability to* travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to *acquire, take possession of, and practice proficiency with constitutionally protected items*" and "violate the Second, Fifth, and Fourteenth Amendments to the United States Constitution…" (FAC (ECF 19) at p. 36) (emphasis added).

Plaintiffs' instant Motion likewise seeks, *inter alia*, a "preliminary and permanent injunction [. . .] restraining and enjoining all Defendants and their officers, agents, servants, employees, and all persons in concert or participation with them who receive notice of the injunction, from enforcing" the Orders "*and Defendants' policies, practices, and customs, that individually and collectively would otherwise*: (1) prohibit the operation of firearm and ammunition product manufacturers, retailers, importers, distributors, shooting ranges, and FSC test providers; (2) *deny individuals the right and ability to travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items*[.]" (Motion (ECF 20) at p. 4) (emphasis added).

On May 19, 2020, Defendants filed their Supplemental Request for Judicial Notice in Support of Defendants' Joint Opposition to Plaintiffs' Application for a Preliminary Injunction (ECF 50) consisting of: a copy of Santa Clara County's May 18, 2020 Order and Appendix C-1

thereto (Exhibit A); a copy of Alameda County's May 18, 2020 Order and Appendix C-1 thereto (Exhibit B); a copy of Contra Costa County's May 18, 2020 Order and Appendix C-1 thereto (Exhibit C); and a copy of San Mateo County's May 15, 2020 Order and Appendix C-1 thereto (Exhibit D) (collectively, the "Revised Orders"). No such request was filed for or on behalf of City of San Jose Defendants, City of Mountain View Defendants, City of Pacifica Defendants, or City of Pleasant Hill Defendants. The Court ordered supplemental briefing on mootness (ECF 53) following the hearing on Plaintiffs' motion for preliminary injunction held on May 20, 2020.

### III.   SUPPLEMENTAL ARGUMENT

**A.   PLAINTIFFS' MOTION AND RELIEF REQUESTED ARE NOT MOOT.**

Defendants have raised, but directly asserted yet, a suggestion of mootness. Any party seeking dismissal on the grounds of mootness bears a "heavy burden." *Rosemere Neighborhood Ass'n v. U.S. Environmental Protection Agency*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000) ("The party alleging mootness bears a 'heavy burden' in seeking dismissal"). And to carry this burden, the party must show "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *American Diabetes Assoc. v. United States Dept. of the Army*, 938 F.3d 1147, 1152 (9th Cir. 2009). Here, the fact remains, Defendants have not fundamentally changed nor ceased enforcing their unconstitutional policies and practices.

Plaintiffs' instant Motion and relief requested are not "moot" for many, but especially one important reason: the County Defendants' orders and enforcement practices continue to "deny individuals the right and ability to travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items." Moreover, the various City Defendants' have not filed evidence with this Court that they have enacted or are enforcing any different policies and enforcement practices at all, much less more "lenient" ones; nor have they averred that they have all ceased their offending policies and enforcement practices in their respective jurisdictions. Thus, they too continue to "deny individuals the right and ability to

travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items." Accordingly, there can be no question of mootness as to either the County or City Defendants.

### 1. Defendants' Revised Orders Do Not Allow Plaintiffs to Engage in the Constitutionally Protected Conduct at Stake.

Plaintiffs' motion, at its core, seeks injunctive relief such that Plaintiffs, Plaintiffs' members and customers, and similarly situated, legally eligible citizens in Defendants' respective jurisdictions can lawfully "acquire, take possession of, and practice proficiency with constitutionally protected" firearms and ammunition. Under Defendants' latest Orders (which have no end date and can be renewed and revised *infinitum* per their own terms) and current enforcement practices, Plaintiffs and others like them *still* cannot do so.[1]

In the May 20th hearing, Defendants suggested that Plaintiffs and others like them can simply conduct firearm and ammunition transfers "curbside." Defendants' counsel went so far as to suggest that the ATF (i.e., the federal Bureau of Alcohol, Tobacco, Firearms and Explosives) would allow curbside transfers throughout the United States. But Defendants' attempts to moot the motion through mischaracterizations of law fall flat. The Byzantine gun control laws that Defendants apparently favor prevent that reality today and make their suggestions of mootness moot. It *remains* the case under the new orders that all travel away from home not deemed "essential" is prohibited. For purposes of any travel to retail businesses, the Revised Orders expressly limit "Essential Travel" to travel to and from "Essential Businesses" and "Additional Businesses," as expressly defined. *See e.g.*, Revised Orders, Exh. A to Def. Req. for Jud. Notice, § 15(i).[2] Firearms and ammunition retailers simply cannot lawfully conduct any business of

---

[1] As a matter of policy, Plaintiffs agree with Defendants that firearm and ammunition transfers should be available in fast and simple "curbside or other outdoor pickup" services. But they are not, which makes Defendants' suggestions of mootness fail.

[2] All the Revised Orders from each county are essentially the same on this point.

selling or transferring firearms and ammunition "only by" some "curbside/outside pickup" process where "[c]ustomers are not allowed to enter the store." *Id.* at Append. C-1, § 1(b)(1). By definition then, they are among neither the "Essential" nor "Additional" businesses to which residents may lawfully travel away from home for any purposes related to acquiring firearms or ammunition – whether inside or outside the county.

Defendants' Revised Orders simply do nothing to restore the ability of Plaintiffs to engage in the constitutionally protected conduct at the heart of the relief they seek through this motion, i.e., "the right and ability to travel to and from, access, and use firearm and ammunition product retailers, FSC test providers, and shooting ranges to acquire, take possession of, and practice proficiency with constitutionally protected items." Myriad state and federal laws and regulations render "outdoor"/"curbside" transfer of firearms and ammunition legally impossible and impractical, and civilly and criminally sanctionable.

In California, a license is required to sell, lease or transfer firearms. Pen. Code § 26500. A firearms licensee must be a federal firearms licensee (FFL), among other qualifications (§ 26700), and any violation of the licensing scheme not only subject the licensee to civil sanctions in the form of license revocation (§ 26800), but also impose criminal liability (§ 26500(b)).

Penal Code § 26805(a) further provides that all "business of a licensee shall be conducted only *in the buildings designated in the license*."[3] (Italics added.) *See also* Pen. Code § 16810 (a "'licensed premises,' 'licensee's business premises,' or 'licensee's place of business' means the building designated in the license."). Penal Code § 26885(a) provides that all firearms must be kept "within the licensed location." And directly to the point, Pen. Code § 26805(d)(1) provides that in any firearm transaction, a firearm must be delivered at "the building designated in the license." At the moment of transfer, a dealer is also required to click on "Deliver Gun" within the

---

[3] A license is required to sell, lease or transfer firearms. Penal Code § 26500. A firearms licensee must be a federal firearms licensee (FFL), among other qualifications (§ 26700), and any violation of any of the provisions which follow are not only grounds for revocation of the license (§ 26800), but also impose criminal liability upon the licensee (§ 26500(b)).

Dealer Record of Sale (DROS) system, "when the purchaser is ready to pick up their firearm."[4] Again, all of this "business of the licensee" must take place in the licensee's building.

Even transfers of firearms between individuals (i.e., private party transfers) must go through a licensed dealer. *See*, Pen. Code § 28050, subdivs. (a) ("A person shall complete any sale, loan, or transfer of a firearm through a person licensed pursuant to Sections 26700 to 26915, inclusive, in accordance with this chapter in order to comply with Section 27545") and (b) ("The seller or transferor or the person loaning the firearm shall deliver the firearm to the dealer who shall retain possession of that firearm.").

Ammunition is similarly regulated. Penal Code § 30348(a) provides that all ammunition sales must be conducted "at the location specified in the license." Again, this refers to the licensee's building (see, e.g., §§ 16822 and 16824, both of which refer back to section 16810 ("the building designated in the license")).

Likewise, under federal regulations, a "business premises" means "the property on which the dealing of firearms is or will be conducted." 27 CFR § 478.11. Compliance with federal law is a requirement for maintenance of a California seller's license, and also provides a separate basis for potential criminal liability.

Practically speaking, curbside delivery of firearms is not plausible either. Penal Code § 26850 further provides that the safe handling demonstration required of handgun recipients, as specifically required by section 26853 (pertaining to semiautomatic pistols), section 26856 (double-action revolvers), or section 26859 (single-action revolvers) must be performed at the time of transfer. Thus, "curbside" transfers would require handguns to be handled and manipulated for some time, in public, with required physical loading and unloading of "dummy" rounds, etc. All of this conduct would certainly raise some eyebrows, and indeed, provide cause for a law enforcement officer to stop and/or detail individuals so doing. In fact, any "curbside,"

---

[4] See California Dept. of Justice, Bureau of Firearms DROS Entry System (DES) - Firearms and Ammunition Dealer User Guide, at pp. 72-73 (currently available online at: https://oag.ca.gov/sites/all/files/agweb/pdfs/firearms/pdf/dros-des-firearms-ammunition-dealer-user-guide.pdf)

public transfer of a handgun, and its corresponding safe handling demonstration, would necessarily require a person to have an exposed handgun outside a vehicle while in a public place or public street, and that is a crime, according to Pen. Code § 26350(a)(1)(A) ("A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on," for example, a "public place or public street in an incorporated city or city and county."). A similar criminal law applies to an unloaded firearm that is not a handgun. Pen. Code § 26400.

We must also point out: the mere unlawful possession of a firearm in a school zone is a crime. *See, e.g.*, Penal Code § 626.9(f), and 18 U.S.C. § 922(q)(2). The common areas and parking lots of businesses open to the public are not protected curtilage for purposes of these restrictions in California. *People v. Tapia*, 129 Cal.App.4th 1153, 1160 (2005) (a sidewalk on an easement of way which has been granted to a public entity is not private property within the meaning of section 626.9); *People v. Strider*, 177 Cal.App.4th 1393, 1402 (2009). And there are many schools in Defendants' jurisdictions which collectively encompass over 3,600 square miles in one of the most populous geographic regions in the United States. More troubling, school zones are not required to be marked, so any "curbside" transfer could run the risk of violating state and federal 1,000-foot restrictions simply because it happens to take place (even inadvertently) within 1,000 feet of a school.

Likewise, one cannot lawfully practice and remain proficient with constitutionally protected items "curbside."

At bottom, the story is the same as it was on day one: Defendants continue to prevent Plaintiffs from engaging in the constitutionally protected conduct, including under the County Defendants' Revised Orders, which allow "Additional Businesses" to do business *only* where "[c]ustomers are not allowed to enter the store." (Revised Orders, Appendix C-1).

**2. Defendants' Voluntary Cessation Does Not Moot the Motion, Since Defendants Cannot Meet their Burden to Show that the Restrictions Imposed by their Prior Orders Will Not be Reinstated.**

Most critically, Defendants have *done nothing* to eliminate the existence of a "live" case

and controversy in which Plaintiffs have a clearly "cognizable interest," and thus have no chance of carrying their "heavy burden" to demonstrate mootness. *American Diabetes Assoc.*, 938 F.3d at 1152. However, to whatever extent one were to assume that the most recent orders of the County Defendants somehow render the claims moot, the voluntary cessation doctrine would intercede to preserve this Court's jurisdiction over the controversy. When the government seeks to "moot" a claim based on a cessation of the conduct over which it has been sued, it bears the equally "heavy burden" of persuading this Court that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur. *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222, 120 S.Ct. 722, 725 (2000) (citing *Laidlaw*, 528 U.S. at 189).

"'[A] case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the [offending] provision.'" *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quoting *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir.1991)). "[T]he mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'" *Rosemere Neighborhood Ass'n v. U.S. E.P.A.*, 581 F.3d 1169, 1173 (9th Cir. 2009) (quoting *Laidlaw*, 528 U.S. at 189). Otherwise, "the courts would be compelled to leave [t]he defendant … free to return to his old ways." *Id.* (internal quotations omitted).

"'A statutory change ... is usually enough to render a case moot, even if the legislature possesses the power to reenact the statute after the lawsuit is dismissed.'" *Rosebrock*, 745 F.3d at 971 (quoting *Chem. Producers & Distribs. Ass'n v. Helliker*, 463 F.3d 871, 878 (9th Cir.2006)). "By contrast, repeal or amendment of an ordinance by a local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice at issue." *Id.* (internal quotations omitted). "Particularly relevant to this case, a policy change not reflected in statutory changes or even in changes in ordinances or regulations will not necessarily render a case moot." *Id.* Indeed, what we have here is the last of the sort – a mere policy change at the county level devoid of any legislative process – and thus of the sort *most likely* to recur.

Assuming *arguendo* that the new orders reflect a cessation of the conduct being challenged in this action (which they do not), there is certainly no guarantee that the challenged

actions will not recur. In fact, Defendants have expressly reserved unto themselves the full power and right to further modify their orders on this subject whenever they see fit, without any input or voice from any member of the affected public. See, for example, Santa Clara County's revised order of May 18, 2020 at p. 2, § 1, which declares:

> As further provided in Section 11 below, the Health Officer will continue to monitor the risks of the activities and businesses allowed under this Order based on the COVID-19 Indicators (as defined in Section 11) and other data. *The businesses and activities allowed under this Order may be modified as necessary based on the Health Officer's analysis of that data.*

(Revised Orders, Def. Req. for Jud. Not., Exh. A, § 1) (emphasis added). Likewise, section 11 of that Revised Order provides that while progress has been made to allow "Additional Businesses" to resume operations, "[t]he Health Officer will continually review whether modifications to the Order are warranted" based upon progress on the COVID-19 trends, *id.*, p. 4, § 11, just as section 15 declares the definition of "Additional Businesses" "will be updated as warranted based on the Health Officer's ongoing evaluation of the COVID-19 Indicators and other data." Indeed, all of the Health Officer defendants have indicated in their respective declarations that greater restrictions and superseding orders had become necessary due to the lack of initial progress in slowing the spread of COVID-19, and that the public health emergency have "substantially worsened" since issuance of their initial orders. See, e.g., Decl. of Dr. Chris Farnitano (ECF 46-3), ¶¶ 9-11; Decl. of Dr. Scott Morrow (ECF 46-12), ¶¶ 16-17; Decl. of Dr. Erica Pan (ECF 46-6), ¶¶ 16-17; Decl. of Dr. Sara H. Cody (ECF 46-11); ¶¶ 19-22.

All of this means that if the health situation deteriorates, and another spike is seen in the COVID-19 data, which seems quite plausible if not likely based on the widely disseminated warnings about a "second wave,"[5] the Revised Orders may well be further modified so as to

---

[5] *See e.g.,* https://www.reuters.com/article/us-health-coronavirus-usa-winter/cdc-chief-warns-second-covid-19-wave-may-be-worse-arriving-with-flu-season-idUSKCN2233E8. The reported warning of the CDC Director about the "possibility that the assault of the virus on our nation next winter will actually be even more difficult than the one we just went through" is especially noteworthy here, given the Defendants' concession at the May 20th hearing that we would have "a problem" constitutionally if this deprivation were to continue until December.

further restrict the constitutional rights at stake.

### 3. The Restrictions Are Capable of Repetition, Yet Evading Review.

In a similar vein, any assumed mootness would not deprive this Court of jurisdiction because the controversy is inherently one "capable of repetition, yet evading review." *Shipp v. Schaaf*, No. 19-CV-01709-JST, 2019 WL 3842084, at *1 (N.D. Cal. Aug. 15, 2019) (citing *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)).  This related exception to mootness applies "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Id*. (citing *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018)).

At their core, each of the new and superseding orders (like the prior ones) infringes upon the exercise of core fundamental constitutional rights at stake, including the right to acquire arms and ammunition. Expecting the parties to repeat this process by filing and opposing new and superseding motions – or worse, commencing a whole new lawsuit – every time a new series of orders is issued would place the process over substance, needlessly squander time and resources, and, most significantly, permit this true controversy about a real deprivation of fundamental rights to go unchecked – indefinitely.  This matter should be resolved on its merits.

### IV. CONCLUSION

The requested injunctive relief is not moot and the Plaintiffs' motion should be granted.

Dated: May 22, 2020         **SEILER EPSTEIN LLP**

/s/ *George M. Lee*
George M. Lee

Attorney for Plaintiffs