George M. Lee (SBN 172982)
gml@seilerepstein.com
**SEILER EPSTEIN LLP**
275 Battery Street, Suite 1600
San Francisco, California 94111
Phone: (415) 979-0500
Fax: (415) 979-0511

Raymond M. DiGuiseppe (SBN 228457)
law.rmd@gmail.com
**THE DIGUISEPPE LAW FIRM, P.C.**
4320 Southport-Supply Road, Suite 300
Southport, North Carolina 28461
Phone: 910-713-8804
Fax: 910-672-7705

Adam Kraut, Esq. (Admitted *pro hac vice*)
akraut@fpclaw.org
**FIREARMS POLICY COALITION**
1215 K Street, 17th Floor
Sacramento, CA 95814
(916) 476-2342

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JANICE ALTMAN, an individual, et al.<br><br>             Plaintiffs,<br>     vs.<br><br>COUNTY OF SANTA CLARA, CALIFORNIA, et al.<br><br>             Defendants. | Case No. 4:20-cv-02180-JST<br><br>**SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:       May 20, 2020<br>Time:      2:00 p.m.<br>Judge:     Hon. Jon Tigar |

**ARGUMENT IN REPLY**

A. **STATE LAW REQUIRES ALL BUSINESS OF A LICENSEE TO TAKE PLACE *WITHIN* THE BUILDING DESIGNATED IN THE LICENSE.**

Plaintiffs have shown that federal and State laws and regulations prevent Plaintiffs from engaging in the conduct Defendants suggest. Defendants' orders and enforcement practices prevent individuals from entering, performing legally required functions, and taking physical possession within a dealership, and thus prevent individuals from engaging in constitutionally protected conduct (e.g., purchasing and taking possession of firearms and ammunition, and going to and using public proficiency ranges like Reed's Indoor Range) for which Plaintiffs have sought preliminary injunctive relief. Defendants counter by merely questioning whether state and federal laws *really* bear any obstacle to curbside delivery of firearms and ammunition and, remarkably, encouraging Plaintiffs to just go ahead and conduct firearm and ammunition transactions curbside, in alleys and parking lots, or even "behind a store—for example in an outdoor walkway covered by the same roof." Defendants further suggest that Plaintiffs and others should just not worry about dozens of serious criminal laws banning firearm conduct and possession in public, or being in un-marked school zones.

First, Defendants fail to refute the plain-text requirement that *all* "business of a licensee . . . be conducted only in the buildings designated in the license[,]" Pen. Code § 26805(a), and that all firearms must otherwise be delivered at "the building designated in the license," Pen. Code § 26805(d)(1). Defendants quibble with whether the Legislature's use of the word "building" really meant building, or whether it meant something else, like "premises." The plain fact remains, however: the Legislature used the term "building," and clearly could have used the term "premises" had it intended to do so. But it did not. Not only that, it actually confined the term "premises" to include only "the building designated in the license." Pen. Code § 16810. The ordinary meaning of the term "building" is "a covered structure that stands predominately by itself and appears more separate and distinct from any other structure than connected to and a part of another structure," *People v. Muszynski*, 100 Cal.App.4th 672, 679 (2002) (construing definition of a building within the meaning of an arson statute), not a public sidewalk, a parking

lot, a back alley *behind* a building, or the curb of a public road.[1]

Second, Defendants claim Pen. Code § 26805(d)(3) permits home delivery of firearms. Plaintiffs would prefer that firearm and ammunition transfers be available in fast and simple home-delivery services (perhaps via a "GunDash" mobile application). But even if one statute allows for the mere delivery of a firearm, the totality of statutes and regulations imposing both pre and post-delivery requirements prevent firearm and ammunition transactions and transfers to take place outside a licensee's building. See Supp. Decl. of Roman Kaplan, submitted herewith. As Plaintiffs have already pointed out, strict laws and regulations require all of the "business of the licensee" to take place at, indeed *within* the licensee's building.[2] FSC testing and firearm and ammunition transfer activities are required to be conducted at the business itself, and in the building—just as the DOJ recently advised Plaintiff Kaplan. *Id*. And with that prevailing regulatory backdrop, because of Defendants' orders and their enforcement of them, Plaintiffs must continue to seek injunctive relief in order to engage in all of the constitutionally protected conduct they are entitled to without fear of arrest, prosecution, and/or other penalties.

**B.     FEDERAL LAW REQUIRES FIREARMS DEALERS' BUSINESS TO TAKE PLACE IN COMPLIANCE WITH STATE LAW.**

With no law or regulation to support their arguments, Defendants cite to a Bureau of

---

[1] In arguing whether outdoor transfers of firearms may run afoul of school zone and carry laws, Defendants' attempt to distinguish *People v. Tapia*, 129 Cal.App.4th 1153 (2005) misses the point. Indeed, the arrest in *Tapia* took place on a "publicly owned easement," which was a sidewalk. 129 Cal.App.4th at 1159. Curbside transactions of the kind Defendants contemplate would, in fact, take place on sidewalks, or in other public places, such as parking lots. *People v. Vega*, 18 Cal.App.3d 954, 958 (market parking lot was a public place within the meaning of former Pen. Code § 12031).

[2] See Supp. Brief at pp. 5-7, fn.4. *See also* 11 Cal. Code Regs. § 4230(c) (requiring that "immediately upon delivery of the firearm," the licensee must access the DES delivery menu, select the "Deliver Gun" option to record the exact time and date the firearm is delivered). If the Court is otherwise inclined to accept Defendants' new theory of defense, Plaintiffs respectfully suggest that the Court grant leave for Plaintiffs to seek joinder of the California Attorney General, Department of Justice, and the ATF under FRCP 19 and/or 20, or their inclusion by amendment, such that the Court could then accord complete relief among the parties.

1  Alcohol, Tobacco, Firearms and Explosives (ATF) industry letter saying that a federally
2  "licensed [firearm] importer, manufacturer, or dealer may, in qualifying circumstances, carry out
3  the requested activities on any part of the business premises, including the exterior of the brick-
4  and-mortar structure." (Bussey Decl. Exh. A at p. 2). But that guidance has an important
5  qualification: "*[P]rovided*, the activity otherwise complies with all applicable federal laws and
6  regulations, and any sale, delivery, or disposition would not violate any State law or published
7  ordinance applicable at the place of sale, delivery, or other disposition." *Id*. (italics original).
8  Once again, federal regulations consider a licensee's "business premises" to be "the property on
9  which the dealing of firearms is or will be conducted," 27 CFR § 478.11, and thus, to the extent
10 that state law constrains such dealing to the physical building—as amply demonstrated
11 throughout—the federal regulations allow nothing further.
12      And moreover, as the ATF letter itself expressly says, "[g]uidance documents [...] are not
13 binding and lack the force and effect of law, unless expressly authorized by statute or expressly
14 incorporated into a contract, grant, or cooperative agreement." (Bussey Decl. Exh. A at p. 3).
15 And "[g]uidance documents may be rescinded or modified in the Department's complete
16 discretion, consistent with applicable laws." *Id*. Thus, even compliance with these guidelines do
17 not insulate a person from federal criminal liability for any conduct expressly proscribed by
18 statute. More, the ATF often "change[s] its mind" about what its own regulations mean, and how
19 they will be enforced. *See*, *e.g.*, *Guedes v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
20 140 S. Ct. 789 (2020) (statement of Gorsuch, J., respecting denial of certiorari).
21 C.    THE MOTION CONTINUES TO PRESENT A LIVE, JUSTICIABLE ISSUE.
22      Within the context of a voluntary cessation argument, Defendants cite *Bd. of Trustees of*
23 *Glazing Health & Welfare Tr. v. Chambers*, 941 F.3d 1195 (9th Cir. 2019) (en banc) to assert
24 that there is a presumption of mootness. But firstly, that case involved a legislative enactment
25 and fix that was intended completely to address the ERISA preemption issues that were
26 presented in that lawsuit. Here, there is no legislative enactment, but only a set of Revised Orders

of the county officers, which do not even address³ Plaintiffs' concerns here. Again, "[b]y contrast, repeal or amendment of an ordinance by a local government or agency does not necessarily deprive a federal court of its power to determine the legality of the practice at issue." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

But the ultimate question presented is not whether a technical set of orders now supersedes the old ones, but whether the new orders continue to harm plaintiffs to any degree. As the Ninth Circuit even more recently stated: "To determine whether a legislative change has rendered a controversy moot, we ask 'whether the new ordinance is sufficiently similar to the [previously challenged] ordinance that it is permissible to say that the challenged conduct continues.' […] If the amended ordinance threatens to harm a plaintiff in the same fundamental way—even if to a lesser degree—the plaintiff will still have a live claim for prospective relief." *Cuviello v. City of Vallejo*, 944 F.3d 816, 824 (9th Cir. 2019) (citing *Ne. Fla. Chapter of Associated Gen. Contractors v. City of Jacksonville*, 508 U.S. 656, 662 n.3, 113 S.Ct. 2297 (1993)). In *Cuviello*, the Court examined the City of Vallejo's claim of mootness on appeal, after the city claimed to have amended its ordinance to ease the restrictions constituting prior restraint on the plaintiff's First Amendment activity, and concluded that there was no meaningful difference between the prior and new versions of the permit requirement. Although it may have lessened the asserted harm caused by the permit requirement, it did not eliminate it. 944 F.3d 816, 825 (9th Cir. 2019). Here, as amply demonstrated, there is no *meaningful* difference in the Revised Orders insofar as they affect the Plaintiffs' rights, and therefore, there is no issue of mootness by superseding "legislation." The harm remains.

D. **DEFENDANTS' ORDERS AND ENFORCEMENT PRACTICES CONTINUE TO MEANINGFULLY INFRINGE UPON THE RIGHTS AT STAKE.**

Finally, Defendants go beyond the bounds of the mootness assertion to reopen their

---

³ If the County Defendants were serious about the mootness issues presented here, they could have expressly stated—within the Revised Orders themselves—that dealers may conduct firearm and ammunition transactions in their licensed dealerships and that individuals could go into them, as they can other allowed facilities which they favor.

argument on the merits. (Supp. Opp. Brief, pp. 8-10). In this regard, defendants cite to *Teixeira v. County of Alameda*, 873 F.3d 670 (9th Cir. 2017) (en banc). But *Texeira*, in fact, supports Plaintiffs' claim for injunctive relief here, for if *Texeira* stands for the proposition that the plaintiffs failed to state a claim that a county ordinance "meaningfully inhibit[ed] residents from acquiring firearms within their jurisdiction[,]" or that "[c]onspicuously missing from this lawsuit is any honest-to-God resident of Alameda County complaining that he or she cannot lawfully buy a gun nearby[,]" 873 F.3d at 680–81, then the converse *must* be true: that where those limitations exist and are proven, they rise to the level of a substantial infringement on Second Amendment conduct. If the judges of the *en banc* panel disagreed with whether the denial of a conditional use permit to *one* prospective gun store owner meaningfully burdened the right, all might have agreed that a complete, county-wide shutdown of the right to acquire arms was not trivial.

And therefore, pandemic or not, Defendants were, indeed, obligated to justify their rationalization that less restrictive alternatives were not available. This they have failed to do, and in fact, have not offered any evidence whatsoever that Second Amendment concerns were even considered at all. For example, none of the County Health Officers' declarations indicated that they even bothered to look at the actual effect that allowing firearm and ammunition retailers to remain open would actually have on the public health. Nor was there any evidence of any actual comparison between, say, firearm retailers and hardware stores. When constitutional rights are at stake, a court must look beyond "broadly formulated interests" and to scrutinize the asserted harm of granting specific exemptions. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 726-27, 134 S.Ct. 2751 (2014). Defendants' reliance on "we can't exempt them all" as an excuse to exempt none simply won't cut it, not as far as constitutional rights are concerned.

And neither do Defendants' illusory promises that the restrictions are "temporarily indefinite" provide them with any cover. For the loss of constitutional freedoms, even for minimal periods of time, constitutes irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005, 1012 (N.D. Cal. 2007). And when those "minimal" periods of time turn to "temporarily indefinite," it's time for the courts to step in.

Dated: May 29, 2020            **SEILER EPSTEIN LLP**

/s/ *George M. Lee*
George M. Lee

Attorney for Plaintiffs